U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF VERMONT** 2022 DEC 29 PM 1: 52

CLERK
BY
DEPUTY CLERK

| | |
|---|---|
| SEA SHEPHERD CONSERVATION SOCIETY,<br><br>Plaintiff,<br><br>vs.<br><br>PAUL WATSON, CAPTAIN PAUL WATSON FOUNDATION, SEA SHEPHERD ORIGINS<br><br>Defendants. | Case No.: 2: 22-cv-227<br><br>**VERIFIED COMPLAINT ALLEGING TRADEMARK AND SERVICE MARK INFRINGEMENT, UNFAIR COMPETITION, FALSE ADVERTISING, CYBERPIRACY, TORTIOUS INTERFERENCE, TRADE LIBEL, CONSPIRACY, UNJUST ENRICHMENT, AND PRIMA FACIE TORT, SEEKING INJUNCTIVE RELIEF AND DAMAGES AND DEMAND FOR JURY TRIAL** |

## COMPLAINT

Plaintiff Sea Shepherd Conservation Society (hereinafter "Plaintiff" or "SSCS"), by and through its undersigned attorneys, for its complaint against Defendants Paul Watson ("Watson"), the Captain Paul Watson Foundation, and Sea Shepherd Origins (collectively, "Defendants"), alleges as follows:

## NATURE OF ACTION

1.      This is an action for trademark and service mark infringement, unfair competition, false advertising, cyberpiracy and other relief arising under the trademark and service mark laws of the United States, specifically 15 U.S.C. § 1051 et seq. (hereinafter "Lanham Act") and under the common law, as well as for tortious interference with prospective business relations, trade libel, conspiracy, unjust enrichment, prima facie tort, and for an injunction arising out of Defendants' misappropriation and infringement of Plaintiff's trademarks and service marks. Defendants are using all of the foregoing to divert support and fundraising away from Sea

1

Shepherd Conservation Society in favor of Watson's newly formed and promoted organizations, "Sea Shepherd Origins" and the Captain Paul Watson Foundation. Indeed, Watson, who is a former employee of Plaintiff, unlawfully conspired with others to unfairly compete with Plaintiff by establishing competing organizations in connection with which Defendants are using SSCS's intellectual property to divert support to and away from SSCS. In light of Defendants' willful and unlawful conduct, Defendants should be immediately enjoined from continuing their unlawful acts and all of Defendants' ill-obtained fundraising revenue should be disgorged and awarded to Plaintiff.

## THE PARTIES

2.      Sea Shepherd Conservation Society is a non-profit corporation organized and existing under the laws of the State of Oregon with offices at 209 East Alameda Ave, #205 Burbank, California 91502. SSCS also has offices in Woodstock, Vermont and Arlington, Virginia.

3.      Upon information and belief, defendant Watson is a United States and Canadian citizen residing in the state of Vermont with an address at 138 Merlin Way Plymouth, Vermont 05056.

4.      Upon information and belief, the Captain Paul Watson Foundation is an entity organized and existing under the laws of the State of Delaware, whose non-profit status is pending. The Captain Paul Watson Foundation was established by Watson on July 13, 2022 and on information and belief, is operated by Watson in the state of Vermont. According to its website, www.paulwatsonfoundation.org, the Captain Paul Watson Foundation was "established to promote and further the legacy of Captain Paul Watson."

5.      Upon information and belief, Sea Shepherd Origins is a newly formed organization, entity, d/b/a, alliance, conspiracy or, according to Watson, a "coalition," "movement," and/or "partnership," led, conceived and controlled by Paul Watson and comprised of Paul Watson, the

2

Captain Paul Watson Foundation, and other non-profit organizations and/or individuals previously affiliated with Plaintiff, namely: (1) Nathalie Gil, Director and President of Instituto Sea Shepherd Brasil ("SSB"), (2) Lamya Essemlali, President of Sea Shepherd France, Association Loi 1901 ("SSF"), (3) Rob Read, Director of Sea Shepherd United Kingdom ("SSUK"), and (4) Clementine Pallanca, former Director of SSCS.

6.       Upon information and belief, Watson currently serves as (i) a member of the Board of Directors and as Trustee/Director of SSUK (ii) a member of the Board of Directors of SSB; and (iii) a member of the Board of Directors and the President of SSF.

## JURISDICTION, VENUE AND STANDING

7.       This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338 because Plaintiff's claims arise under the trademark and service mark laws of the United States. This Court also has supplemental jurisdiction pursuant to 28 U.S.C. §§ 1338(b) and 1367 over Plaintiff's claims that arise under the laws of the State of Vermont.

8.       This Court has personal jurisdiction over the parties to this action because (i) Plaintiff's claims arise in this judicial district; (ii) each party does business in this judicial district; (iii) Plaintiff's claims are related to Defendants' contacts with this judicial district; (iv) Defendants have purposefully availed themselves of the privilege of conducting business activities within the State of Vermont and in this judicial district; and (v) in light of the foregoing, the exercise of personal jurisdiction over Defendants in this judicial district comports with Vermont law and with traditional notions of fair play and substantial justice.

9.       Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because: (i) Plaintiff's claims arise in this judicial district and as a result of Defendants purposefully availing themselves of the privilege of conducting activities within this judicial district; (ii) each party does business in this judicial district; (iii) witnesses and evidence are located within this judicial district;

3

(iv) certain of the acts complained of herein have taken place in this judicial district; and (v) Defendants are subject to this judicial district's personal jurisdiction with respect to this action.

10.     Plaintiff has standing to bring this action pursuant to 15 U.S.C. §§ 1114 and 1125(a).

## FACTUAL ALLEGATIONS

### A. THE HISTORY OF SEA SHEPHERD CONSERVATION SOCIETY

11.     Defendant Watson was one of the founders of SSCS, which was established on April 8, 1981 as a U.S. based, non-profit corporation under the laws of the state of Oregon.  The fundamental mission of SSCS has been and remains to protect and conserve the world's oceans and marine wildlife.

12.     Beginning in or about 1994, SSCS began to authorize the formation of other affiliated Sea Shepherd legal entities ("Affiliated Entities") and/or authorized chapters composed of onshore volunteers ("Authorized Chapters") that share the vision and mission of SSCS.

13.     Affiliated Entities include Sea Shepherd Global ("SSG"), which is a non-profit organization organized under the laws of Netherlands, as well as SSF, SSB, and SSUK. Some of the Affiliated Entities own trademark and service mark rights in and to various Sea Shepherd trademarks in their respective jurisdictions, while others operate under license from SSCS and/or SSG.

14.     SSCS is the exclusive owner of the Sea Shepherd name and trademark in the United States, as explained more fully below. Up until the time of Defendants' unlawful acts, no one has operated in the U.S. using the SEA SHEPHERD name and trademark without the authorization of SSCS.

15.     Since their respective establishments, the various Affiliated Entities and Authorized Chapters operating under the Sea Shepherd umbrella have worked together, at the encouragement and approval of SSCS,  to protect and conserve the world's oceans and marine wildlife.

4871-4288-0836.v6

16.     Between 1981 and 2012, Watson served SSCS in various capacities, including as a member of the Board of Directors, President, and Executive Director.

17.     For approximately the last ten years, Watson's level of involvement in SSCS has been sporadic, and at times, non-existent. Specifically, in or around late 2012, Watson resigned from SSCS (for the first time) and was not part of SSCS in 2013 or 2014. In mid-2015, Watson returned to SSCS as a consultant and advisor and from 2016 to early 2019 he was an employee of SSCS holding various management positions. Since early 2019, Watson has not directed the activities, policies or procedures of SSCS and in January of 2021 he resigned as an officer and director, but remained employed as an archivist.

18.     On or about July 27, 2022, Watson, for a second time, fully resigned from SSCS of his own volition, stating that he was being marginalized by the organization and/or that the organization was moving in a direction of which he falsely claimed he did not approve.

19.     Upon information and belief, through the years, Watson served as a member of the Board of Directors of some of the Affiliated Entities, including as a member of the Board of Directors of SSUK, SSB, and, for a time, SSG.

20.     During his time with SSCS, Watson had access to confidential and proprietary information such as donor lists and business information related to the operation of SSCS and its fundraising efforts.

21.     Upon leaving SSCS, Watson did not retain any rights to use any of the intellectual property associated with SSCS.

**B. SEA SHEPHERD CONSERVATION SOCIETY'S INTELLECTUAL PROPERTY**

22.     In the United States, SSCS is the owner of the trademarks and service marks SEA SHEPHERD and SEA SHEPHERD CONSERVATION SOCIETY ("Plaintiff's Word Marks"), the logo mark depicted below (the "Jolly Roger Logo"), as well as the U.S. trademark and service

5

mark applications and registrations set forth in **Schedule A**, attached hereto (together with Plaintiff's Word Marks and the Jolly Roger Logo, collectively "Plaintiff's Marks").



Plaintiff has been using Plaintiff's Word Marks for over 40 years and the Jolly Roger Logo for over 15 years in the United States in connection with a wide array of goods and services, including research and consultation services in the field of marine wildlife conservation, promoting the public awareness of the need for marine wildlife conservation, providing educational services related to the same, and promoting and selling many related educational and promotional goods and services, all of which are covered by the various U.S. trademark and service mark filings identified in **Schedule A**. Printouts from the United States Patent and Trademark Office's ("USPTO") online databases of SSCS's active U.S. registrations are attached hereto as **Exhibit A** (the "Registrations"). All of these registrations are incontestable within the meaning of 15 U.S.C. § 1065 of the Lanham Act.

23.     In addition to the United States, SSCS is the exclusive owner of the trademark rights to Plaintiff's Marks in Central America, South America (excluding Brazil), and the Galapagos Islands (collectively "SSCS Territory").

24.     In connection with its marine life conservation, research and education services, SSCS works lawfully together with both governmental and non-governmental organizations within the SSCS Territory against unlawful whaling and fishing operations.  For example, Plaintiff is involved in an initiative called Operation Milagro with the Mexican government dedicated to improving the chances of survival for the vaquita porpoise.  In addition to engaging

6

in joint patrolling of the Vaquita Refuge with Plaintiff, the Mexican Navy provides valuable protection to Plaintiff's vessels and crew members in the area.

25.     Plaintiff also sells merchandise and educational goods bearing Plaintiff's Marks for the purposes of promoting and raising money for SSCS. Such activities are essential to SSCS's fundraising efforts.

26.     The Jolly Roger Logo and other designs comprising Plaintiff's Marks were created by Geert Vons, an artist then working in collaboration with SSCS and SSG. In multiple documents that Watson himself signed, Watson expressly acknowledges that Geert Vons created the subject designs.

27.     Plaintiff's Marks are inherently distinctive.

28.     Because SSCS has used Plaintiff's Marks for decades in the United States, Plaintiff's Marks have also acquired secondary meaning.

29.     As a result of the foregoing, in addition to Federal trademark and service mark rights in the United States, by virtue of its continuous use of Plaintiff's Word Marks since 1981 and the Jolly Roger Logo since the early 2000s in connection with its various goods and services, SSCS also has common law rights in and to Plaintiff's Word Marks dating back to at least as early as 1981 and in and to the Jolly Roger Logo dating back at least to the early 2000s.

30.     SSCS has gone to great lengths to protect the use and exploitation of Plaintiff's Marks, including requiring the various Authorized Chapters in the SSCS Territory to enter into agreements with SSCS whereby the Authorized Chapters acknowledge that SSCS owns the trademark rights in and to Plaintiff's Marks and that any use by the Authorized Chapters must be approved by SSCS. SSCS has also entered into a global agreement with SSG which sets forth the global trademark rights as between SSCS and SSG.

31.     Over the years, Plaintiff has invested a substantial amount of time, money, and other resources advertising, promoting, marketing, and publicizing its goods and services

7

provided under Plaintiff's Marks. As a result of Plaintiff's substantial advertising, marketing and promotional efforts, Plaintiff's Marks have acquired substantial recognition, goodwill, and support from around the world, particularly amongst U.S. consumers aligned with SSCS's mission. Plaintiff's Marks have become important source indicators that identify the quality goods and services provided by Plaintiff. For all of the foregoing reasons, Plaintiff's Marks are exceedingly valuable assets of Plaintiff.

## C. **DEFENDANTS' UNLAWFUL CONDUCT**

32.     Just two weeks before his second resignation from SSCS, on July 13, 2022, Watson founded the Captain Paul Watson Foundation.

33.     Watson has been promoting the Captain Paul Watson Foundation through its website located at https://www.paulwatsonfoundation.org as well as through various social media platforms such as Facebook, Instagram, YouTube and Twitter.

34.     According to its website, the Captain Paul Watson Foundation "has been established to promote and further the legacy of Captain Paul Watson." A screenshot of the Captain Paul Watson Foundation "About Us" page is attached hereto at **Exhibit B**.

35.     On September 11, 2022, in a post on his personal Facebook page, Watson made the following statement acknowledging that the Captain Paul Watson Foundation and Sea Shepherd are two separate organizations, and that SSCS is the rightful legal owner of the Sea Shepherd name (although falsely claiming that he created the logo):

> *"I have decided instead to establish the Captain Paul Watson Foundation... I will let Sea Shepherd be Sea Shepherd. They claim legal authority over the logo and the name that I created. So be it."*

A screenshot of the above mentioned post is attached hereto at **Exhibit C**.

36.     In addition, while beginning to promote the Captain Paul Watson Foundation, in an effort to divert support away from SSCS, Watson took to social media to enrage his personal

8

supporters by criticizing and defaming SSCS and those working in allyship with SSCS. For example, in a series of Facebook and Instagram posts on his personal pages from September through November of 2022, Watson stated the following:

> *"I RESIGNED BECAUSE THEY MARGINALIZED ME, FORCED ME OFF THE BOARD THROUGH DECEPTION, FIRED DIRECTORS THAT SUPPORTED ME AND MADE THE DECISION TO CHANGE COURSE IN A DIRECTION CONTRARY TO EVERYTHING SEA SHEPHERD ONCE STOOD FOR. THEIR MISSION AND CAMPAIGNS HAVE CHANGED. THEY PUBLICLY SAID SO THEMSELVES AND TOLD ME DIRECTLY THAT THEY WOULD NO LONGER PURSUE DIRECT ACTION CAMPAIGNS EVEN GOING SO FAR AS TO TELL ME THAT MY HISTORY WAS AN EMBARRASSMENT TO THEM BECAUSE OF THE CONTROVERSY I CAUSED WITH MY CAMPAIGNS."*

> *"The problem lies with SSCS. They have scrapped the White Holly, the John Paul Dejoria and the Sharpie. They have sold the Brigitte Bardot and have plans to sell the Martin Sheen. They have purchased the Sharkwater against my advice and they plan to use it as a comfortable platform for scientist to do research becoming in effect an uber service for researchers...Working with SSCS under its present leadership means being associated with an entity that is not what Sea Shepherd is meant to be."*

> *"I am also hopeful that other Sea Shepherd Groups like Italy, Germany, Belgium, Switzerland, New Zealand, Austria, Greece, Spain and others will decide to reject the diminishment of what Sea Shepherd has always been by accepting the demands of Sea Shepherd USA to confirm to the US agenda of changing the course of what has been the most effective marine conservation movement on the planet."*

Screenshots of the above referenced posts and additional social media posts showing Watson's criticism of SSCS are attached hereto at **Exhibit D**.

37.     Article 2 of the 1981 Articles of Incorporation for SSCS, a copy of which is attached hereto as **Exhibit E**, sets forth the following purposes for which SSCS was established:

> *"2.1     To promote awareness of environmental problems, alternative and solutions among the people of the United States and the World.*

> *2.2     To educate the general public as the importance of ecological stability and sound environmental management.*

> *2.3     To research, develop and promote innovative environmentally sound alternatives to industries and institutions.*

9

2.4 To provide funding for scientific research in the field of ecology, applied anthropology, environmental planning, agriculture, aquaculture and urban engineering and to provide funding for scholarships to the general public for studies in those same fields.

2.5 To initiate action to oppose industrial and/or institutional development projects which endanger or threaten the health and welfare of human populations.

2.6 To initiate action on behalf of endangered or threatened species of flora and fauna when necessary to insure continued survival.

2.7 To initiate action to prevent the misuse of natural habitat if such misuse demonstrates evidence of potential ecological damage.

2.8 To foster cooperation among Nations to protect ecosystems in accordance with the common heritage principle and to provide guidance in the formulation and enactment of international law designed to protect the environment withing the tenants of the common heritage principle.

2.9 To do everything incidental and necessary to promote and attain the foregoing objects throughout the United States and the World."

38. Further, the SEA SHEPHERD service mark registration (Registration no. 2,085,489) filed in 1996 covers "research and consultation services in the field of marine wildlife conservation; and promoting the public awareness of the need for marine wildlife conservation."

39. Watson's false statements regarding Sea Shepherd's purpose and activities to the contrary undermine the integrity of the services SSCS offers and have the potential to cause reputational harm in the minds of current supporters, potential new supporters and current and potential future governmental and non-governmental partners of SSCS.

40. Watson's narrative regarding SSCS's alleged new direction is also in direct contrast to the support that Watson expressed just months before his resignation. For example, in January 2022, Watson wrote the following in a statement that he sent to SSCS leadership:

"Partnerships with governments bestows legitimacy and as such it demands from Sea Shepherd a more responsible and disciplined approach to operations. Now is the time to think big and to visualize the potential that we have to really make a significant difference. We have never been a protest organization. Our approach has always been to actively

10

*intervene against unlawful and destructive activities. A partnership relationship with effective enforcement agencies allows us the opportunity to significantly intervene on a much large scale and to be much more effective."*

A copy of the statement is attached hereto as **Exhibit F.**

41.     This would not be the first time Watson flips the switch on his supporters. On or about December 12, 2022, Watson changed course again, and instead of focusing on separating himself and the Captain Paul Watson Foundation from SSCS, Watson (in collaboration with SSB, SSF and SSUK, and personnel that were previously affiliated with SSCS) decided to profit off the goodwill of the Sea Shepherd name and Plaintiff's Marks by establishing an organization named Sea Shepherd Origins, which name is virtually identical to the Sea Shepherd name and mark.

42.     Watson has induced certain Affiliated Entities, including but not limited to SSUK, SSB and SSF, three Affiliated Entities of which he is a member of the Board of Directors, to join and collaborate with him in this new Sea Shepherd Origins organization.  Watson is utilizing his position as a U.S. based leader of these Affiliated Entities to promote Sea Shepherd Origins and assist in the collection of donations from U.S. based supporters in favor of the Captain Paul Watson Foundation.

43.     In addition to the Sea Shepherd word mark, in connection with the Sea Shepherd Origins organization, Watson and his collaborators adopted a logo which is also virtually identical to Plaintiff's Jolly Roger Logo. A side-by-side comparison of Plaintiff's Jolly Roger Logo and Defendants' infringing logo is shown below

11

| Plaintiff's Jolly Roger Logo | Defendants' Infringing Logo |
|---|---|
|  |  |

44.    Sea Shepherd Origins is being promoted via its own website located at https://seashepherdorigins.org/ as well as on various social media platforms such as Facebook Instagram and Twitter.

45.    In an ongoing effort to deceptively use the SEA SHEPHERD name and mark, Watson posted the following on December 13, 2022, in a Facebook post titled "SEA SHEPHERD ORIGINS IS A RESPONSE TO AN INTERNAL ENEMY":

> "Sea Shepherd Origins aims to counter the maneuvers of those who want to force the organization to change course and abandon the courageous approach that has made it a key player in the defense of the marine world for over four decades....The idea that Sea Shepherd should move away from direct action (which by definition does not require the approval of governments) gradually gained ground. Paul Watson has resisted this change in direction. Because of his opposition to abandoning what Sea Shepherd has always been, Captain Paul Watson has been being referred to by some who want this change of direction as 'the Watson problem'."

A screenshot of the above-mentioned Facebook post is attached hereto as **Exhibit G**.

46.    The Sea Shepherd Origins website further goes on to state the following regarding the need for Sea Shepherd Origins, which admits that Sea Shepherd Origins intends to gain support of historical supporters of SSCS.

> "Sea Shepherd Origins has been founded to strengthen the unity of Sea Shepherd entities and prevent the movement from sliding away from its core values. It provides to the public opinion, the media and the historical and new supporters, a clear view on the original values and ethics of Sea Shepherd, and provides a better transparency on the functioning

12

*of the organisation. It is also meant to prevent any discreet recuperation of the movement by people who are not in alliance with Sea Shepherd's original spirit and values."*

A screenshot from Sea Shepherd Origin's website is attached hereto as **Exhibit H**.

47.    Further, Watson is deliberately trying to confuse consumers in the United States and direct support and funding away from SSCS to Sea Shepherd Origins.  In addition to naming this new organization with an indistinguishable name from that of SSCS, he goes so far as to state that Sea Shepherd Origins *is* Sea Shepherd. By way of example, on December 14, 2022 Watson posted the following statement on the Sea Shepherd Origins Facebook page, which has since been taken down due to a violation of Facebook's policies:

> *"Sea Shepherd has always been a passionate movement for the ocean. It is not a narrative to be controlled or to be 'rebranded'.  It is an idea to be carried by the many who show their support. Sea Shepherd Origins defends this idea, it defends our origins. And WE NEED YOU to share your alignment and support with us.   Sign your commitment and take part of the largest movement for the protection of the ocean. **Sea Shepherd Origins does not replace Sea Shepherd. IT IS Sea Shepherd."***

A screenshot of an identical post on the Sea Shepherd Origins Instagram page is attached hereto as **Exhibit I**.

48.    In an effort to garner more support, Watson attempts to induce others to pledge their allegiances by asking supporters to sign their commitment to Sea Shepherd Origins, which in the United States is a direct competitor of SSCS operating under a virtually identical name. A screenshot depicting the pledge form is attached hereto as **Exhibit J.**

49.    Watson's deceptive acts do not stop there. On December 14, 2022, Watson made the following announcement on the Captain Paul Watson Foundation Facebook page, claiming that the Captain Paul Watson Foundation is in partnership with Sea Shepherd Origins in a further attempt to profit off the goodwill of Plaintiff's Marks.

> *"Sea Shepherd Origins represents the international Sea Shepherd groups that are remaining true to the original objectives that I established for Sea Shepherd in 1977.*

13

*These include Sea Shepherd France, the U.K, Brazil, New Caledonia, Tahiti, Austria, Canada, Uruguay and Hungary. The Captain Paul Watson Foundation has been established to replace the Sea Shepherd groups that have deviated from those objectives. The Foundation is now established in the United States and Australia and donations to the Foundation in these countries will be used to operate the ships owned by the Captain Paul Watson Foundation worldwide."*

Such statement could have no other purpose than to further confuse consumers and supporters as to the nature of the relationship between the Captain Paul Watson Foundation and SSCS, the valid trademark owner. A screenshot of the above-mentioned Facebook post is attached hereto as **Exhibit K**.

50.     Further, on or about December 15, 2022, the Captain Paul Watson Foundation Facebook page began to heavily use SSCS's SEA SHEPHERD mark and depict its infringing Sea Shepherd Origins logo which is virtually identical to the Jolly Roger Logo.



Examples of Watson's infringing use of Plaintiff's Marks in connection with the promotion of the Captain Paul Watson Foundation as being in partnership with Sea Shepherd Origins are attached hereto at **Exhibit L**.

51.     Notably, in some instances, Watson just uses SSCS's actual Jolly Roger Logo without even including the word "ORIGINS". Such deceptive behavior can have no purpose other than to induce supporters and consumers into thinking that Watson has the right to use Plaintiff's Marks, which he clearly does not.

4871-4288-0836.v6

52.     Even worse, while allegedly soliciting fundraising for Sea Shepherd Origins, Watson is actually deceptively soliciting funds from U.S. supporters for the Captain Paul Watson Foundation. Specifically, donations collected for Sea Shepherd Origins in the U.S. are being funneled directly to the Captain Paul Watson Foundation from the Sea Shepherd Origins website. A screenshot of the donation page on the Sea Shepherd Origins website bearing Plaintiff's Marks is shown below, and a screenshot of the full webpage along with a Facebook post on the Captain Paul Watson Foundation page requesting donations from Sea Shepherd Origins supporters in the name of partnership with the Captain Paul Watson Foundation are attached hereto at **Exhibit M.**



Again, Watson is using the actual Jolly Roger Logo without the word "ORIGINS", which amounts to false advertising and which undoubtedly would leave consumers and supporters believing that either Watson is the rightful owner of Plaintiff's Marks, or that Plaintiff is somehow affiliated and/or associated with Defendants or that Plaintiff has endorsed or sponsored Defendants' activity.

53.     Based on all of the forgoing deceptive actions, supporters of Watson in the United States have already stated that they will only donate to Sea Shepherd Origins and/or the Paul Watson Foundation, and not to SSCS. An exemplative screenshot showing Watson bragging about the same in a Facebook post is attached hereto at **Exhibit N.**

54.     Watson's need to rely on the goodwill of the Sea Shepherd name and Plaintiff's Marks in order to fund the Captain Paul Watson Foundation is further evidenced by Watson's

15

attempt to sell merchandise and goods that Watson undoubtedly took possession of while an employee of SSCS and which he sold via auction during the month of December of 2022 in support of the Captain Paul Watson Foundation. A screenshot of the auction webpage showing items including and/or comprising Plaintiff's Marks is attached hereto at **Exhibit O**.

55.    By using Plaintiff's Marks in the United States in connection with both the Sea Shepherd Origins organization and the Captain Paul Watson Foundation, Watson is not only causing consumer confusion as the source of goods and services offered by Defendants and falsely advertising that his organizations are one and the same as SSCS, but he is also creating chaos and deceptively diverting support and fundraising away from SSCS in support of his organizations that have nothing to do with SSCS.

56.    By establishing an organization with an infringing name, namely, Sea Shepherd Origins, Watson is also inducing his collaborators to also infringe on Plaintiff's rights in the SSCS Territory, including the United States.  For example, in order to join Watson's Sea Shepherd Origins organization, the collaborating entities and personnel have no choice but to also infringe on Plaintiff's Marks. Examples of Watson's collaborators' social media posts (which are directed to supporters in SSCS Territory, including the United States) that include infringing uses of Plaintiff's Marks are attached hereto at **Exhibit P**.

57.    Finally, Defendants, while holding themselves out to be one and the same as SSCS, are making inflammatory negative statements about Plaintiff's governmental and non-governmental organization partners. For example, on December 19, 2022, Watson made the following statement on his personal Facebook page, whereon Watson calls himself the founder of Sea Shepherd and where Plaintiff's Marks elsewhere appear:

> *"Mexico is making a show of pretending to enforce the ban but the reality is that in pursuit of the highly prized Totoaba swim bladders, a combination of greed, corruption*

16

*and inaction spells very bad news for the survival of the Vaquita...The Mexican government will be responsible for the extinction of the Vaquita unless they implement the one action that can save the Vaquita - 100% enforcement against any fishing activity in the Vaquita Refuge of the upper part of the Sea of Cortez."*

A screenshot of the above-mentioned Facebook post is attached hereto as **Exhibit Q**. Due to Watson's aforementioned deliberate acts directed at mingling and conflating Sea Shepherd Origins and the Captain Paul Watson Foundation on the one hand and SSCS on the other hand, such comments undoubtedly impute SSCS and damage SSCS's relationships.

58.    In sum, Watson's case amounts to that of classic "founder's syndrome," where Watson believes that the non-profit of which he was one of the founders cannot and should not exist or succeed without him at the center. In this vein, Watson's willful and deliberate use of the virtually identical name Sea Shepherd Origins and a logo virtually identical to the Jolly Roger Logo amounts to false advertisement and is likely to cause confusion, mistake, or deception as to the source or origin of Defendants' goods and services.  As a result of Defendants' use of names and logos identical to Plaintiff's Marks in connection with services that are identical to Plaintiff's services and related goods, consumers are likely to believe that Defendants' goods and services in SSCS Territory, including the United States are provided by, or sponsored by, or approved by, or licensed by, or affiliated with or in some other way legitimately connected to Plaintiff, which they are not.

59.    Defendants' acts complained of hereinabove are unlawful, willful, and knowingly performed with the intent and result of injuring Plaintiff.

### D. **DAMAGE AND IRREPARABLE HARM TO PLAINTIFF AS A RESULT OF DEFENDANTS' UNLAWFUL CONDUCT**

60.    Defendants are, without authorization from Plaintiff, using, grossly misappropriating, unlawfully exploiting, and profiting off of Plaintiff's exclusive rights in and to Plaintiff's Marks in SSCS Territory, including the United States. By doing so, Defendants are

17

causing damage and irreparable harm to Plaintiff, as well as to the commercial value and goodwill attached to Plaintiff's Marks in SSCS Territory, including the United States.

61.     Defendants' conduct is causing irreparable harm to Plaintiff because Defendants are intentionally interfering with Plaintiff's exclusive right to control the commercial use of Plaintiff's Marks in SSCS Territory, including the United States, and the ability to generate current and future fundraising from supporters of SSCS.

62.     Given the extreme lengths to which Defendants have gone to infringe upon Plaintiff's Marks, and the fact that Defendants are acting purposefully and willfully, Defendants' conduct is causing irreparable harm to Plaintiff because Plaintiff is losing control of the reputation and goodwill attached to Plaintiff's Marks and there is undoubtedly confusion as to whether Defendants have any plausible claim to Plaintiff's Marks or whether Plaintiff has endorsed and/or authorized Defendants' conduct.

63.     Plaintiff is being irreparably harmed because Defendants' conduct is intentionally deceptive and defamatory. Plaintiff's reputation is being damaged due to Defendants' deceitful social media posts which are designed to divert fundraising away from Plaintiff and in favor of Defendants.

64.     Plaintiff is being irreparably harmed because Defendants are making inflammatory negative statements about Plaintiff's governmental and non-governmental organization partners.  Such statements will undoubtedly cause actual confusion among at least one of Plaintiff's governmental partners, the Government of Mexico and the Mexican Navy, threaten the continued success of the Operation Milagro partnership, and put the safety of Plaintiff's ships and volunteers in the Vaquita Refuge at risk.

18

65.     Plaintiff is being damaged as a result of Defendants' conduct because Watson and his Captain Paul Watson Foundation and Sea Shepherd Origins are in direct competition with Plaintiff, and by purposefully diverting fundraising and support away from SSCS, Defendants are causing economic harm to Plaintiff.

66.     Plaintiff is being damaged because Watson is selling merchandise bearing Plaintiff's Marks in support of Defendants and such activity is in direct competition with Plaintiff's sale of goods, which is causing economic harm to Plaintiff.

## COUNT I

### FEDERAL TRADEMARK & SERVICE MARK INFRINGEMENT

67.     Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs of the Complaint as if they were set forth in full herein.

68.     Defendants, through the conduct described above, are providing in interstate commerce goods and services under marks that are colorable imitations of Plaintiff's Marks, which is likely to cause confusion or mistake and/or to deceive in violation of the Lanham Act Section 32(1) (15 U.S.C. § 1114(1)).

69.     Defendants have committed such acts of infringement willfully and with full knowledge of Plaintiff's prior use and registration of, and rights in and to, its registered trademark and service marks.

70.     As a result of Defendants' acts of infringement, Plaintiff has suffered and will continue to suffer serious and irreparable harm for which there is no adequate remedy at law.

## COUNT II

### UNFAIR COMPETITION UNDER § 43(a) OF THE LANHAM ACT

4871-4288-0836.v6

71.     Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs of the Complaint as if they were set forth in full herein.

72.     Defendants, through the conduct as described above, are providing goods and services under a colorable imitation of Plaintiff's Marks, which is likely to cause confusion or mistake and/or to deceive in violation of Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)).

73.     Defendants have committed such acts of false designation of origin and false description and representation willfully and with full knowledge of Plaintiff's prior use of, prior registration of, and rights in, its SEA SHEPHERD, SEA SHEPHERD CONSERVATION SOCIETY and JOLLY ROGER Logo marks.

74.     As a result of Defendants' acts of unfair competition, Plaintiff has suffered and will continue to suffer serious and irreparable harm for which there is no adequate remedy at law.

## COUNT III

## FALSE ADVERTISING UNDER § 43(a) OF THE LANHAM ACT

75.     Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs of the Complaint as if they were set forth in full herein.

76.     Defendants, through their conduct as described above, are advertising goods and services in violation of Section 43(a)(1)(B) of the Lanham Act (15 U.S.C. § 1125(a)).

77.     Defendants, through their conduct described above, have made false statements of fact about products, services, or commercial activities in their advertisements.

78.     Those advertisements of Defendants have actually deceived or have the tendency to deceive a substantial segment of their audience.

79.     Such deception is material because it is likely to influence buying, donation, support, and partnership decisions.

20

80.     Defendants caused their false advertisements to enter interstate and foreign commerce.

81.     As a result of Defendants' acts of false advertising and unfair competition, Plaintiff has suffered and will continue to suffer serious and irreparable harm for which there is no adequate remedy at law.

## COUNT IV

### COMMON LAW TRADEMARK AND SERVICE MARK INFRINGEMENT AND UNFAIR COMPETITION

82.     Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs of the Complaint as if they were set forth in full herein.

83.     Defendants' aforesaid acts constitute infringement of Plaintiff's rights in its common law trademark and service marks SEA SHEPHERD, SEA SHEPHERD CONSERVATION SOCIETY and the JOLLY ROGER Logo and tend to falsely describe or represent that Defendants' goods and services are provided by, or sponsored by, or approved by, or licensed by, or affiliated with or in some other way legitimately connected to Plaintiff and are of the same character, nature and quality as the services of Plaintiff, thereby damaging Plaintiff and Plaintiff's reputation.

84.     The acts of Defendants complained of hereinabove constitute acts of trademark and service mark infringement and unfair competition against Plaintiff under the common law of the State of Vermont, which acts have been committed knowingly and willfully and have injured Plaintiff in its trade and business.

85.     By reason of the aforesaid acts, Defendants have caused damage to Plaintiff and to the goodwill associated with Plaintiff's mark.

21

## COUNT V

## CYBERPIRACY UNDER 15 USC §1117 AND §1125(d)(1)

86.     Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs of the Complaint as if they were set forth in full herein.

87.     Defendants have a bad faith intent to profit from Plaintiff's Marks.

88.     Defendants are utilizing domain names and social media account handles that are identical and/or confusingly similar to Plaintiff's Marks.

89.     Defendants, without authorization, have utilized Plaintiff's media and Plaintiff's Marks in commerce, on and in connection with services, to serve a source-identifying function.

90.     Plaintiff's fundraising efforts and services have been visible and available throughout the United States and Plaintiff has used Plaintiff's Marks in interstate and international efforts with American donors, volunteers, staff, and employees as well as the general public.

91.     Without Plaintiff's authorization, and in violation of Plaintiff's rights under 15 U.S.C. §1125(d), Defendants have unlawfully registered, trafficked in, and/or used Plaintiff's Marks, which are and have been distinctive at the time of Defendants' conduct.

92.     Defendants have, at all relevant times herein, had a bad-faith intent to profit or otherwise improperly gain from Plaintiff's Marks.

93.     Defendants continued their conduct even though a reasonable person would conclude that Origins had stolen Plaintiff's property and Plaintiff's Marks.

94.     Defendants were conscious and willing participants in the illegal scheme of misappropriating Plaintiff's property and Plaintiff's Marks in the success of Defendants' illegal activities. Defendants had a bad faith intent to profit or otherwise gain from Plaintiff's property

22

4871-4288-0836.v6

and Plaintiff's Marks by presenting themselves as the long-standing organization that Origins is not.

95.     Defendants have never had any genuine belief, nor any reasonable basis to believe, that their actions were "a fair use or otherwise lawful" act as used in 15 U.S.C. §1125(d)(1)(B)(ii).

96.     Accordingly, under 15 U.S.C. §1125(d)(1)(C), Plaintiffs seek an injunction from this Court directing Defendants and each of them to take steps necessary to cause the permanent return of Plaintiff's property and Plaintiff's Marks, including forfeiture or cancellation of the domain name seashepherdorigins.org or the transfer of the domain name to Plaintiff.

97.     This is an "exceptional case" such that Plaintiff is entitled, pursuant to 15 U.S.C. §1117(a), to recover its reasonable attorneys' fees from Defendants.

98.     Defendants' conduct has been willful, malicious, duplicitous, and done with conscious disregard to Plaintiff's rights and with the intent of depriving Plaintiff of its rights, thereby justifying an award of punitive damages.

## COUNT VI

### TORTIOUS INTERFERENCE WITH PROSPECTIVE BUSINESS RELATIONSHIP/ECONOMIC ADVANTAGE

99.     Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs of the Complaint as if they were set forth in full herein.

100.    As described above, Plaintiff had a business relationship/economic advantage with numerous third party donors and supporters as well as government and non-governmental partners.

101.    Defendants had knowledge of these business relationships and economic advantage gained from these donors, supporters, and partners.

23

4871-4288-0836.v6

102.    Defendants acted intentionally and improperly to interfere with these business relationships and economic advantage with these donors, supporters, and partners.

103.    Defendants' actions were wrongful.

104.    As a result of Defendants' conduct set forth herein, Plaintiff suffered actual damages.

105.    Defendants' interference as described herein was a cause of Plaintiff's damages.

## COUNT VII

### TRADE LIBEL

106.    Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs of the Complaint as if they were set forth in full herein.

107.    Defendants, through their conduct as described herein, have made numerous statements and/or representations which are false or misleading.

108.    Such false or misleading statements and/or representations were material and made in interstate commerce in connection with the provision of goods or services.

109.    Such false or misleading statements and/or representations were commercial statements of advertising or promotion.

110.    Defendants' conduct as described herein was a cause of Plaintiff's damages.

## COUNT VIII

### PRIMA FACIE TORT

111.    Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs of the Complaint as if they were set forth in full herein.

112.    Defendants, through the conduct described herein, has intentionally inflicted harm on Plaintiff without justification.

24

113.    As a result of Defendants' aforesaid conduct, Plaintiff has suffered and continues to suffer harm.

## COUNT IX

### CONSPIRACY

114.    Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs of the Complaint as if they were set forth in full herein.

115.    Defendants had an agreement to engage in the aforementioned unlawful conduct.

116.    In furtherance of Defendants' agreement to engage in the aforementioned unlawful conduct, Defendants did in fact engage in the unlawful conduct described herein.

117.    As a result of Defendants' conduct, Plaintiff has suffered and will continue to suffer serious and irreparable harm for which there is no adequate remedy at law.

## COUNT X

### UNJUST ENRICHMENT

118.    Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs of the Complaint as if they were set forth in full herein.

119.    During the course of his involvement with Plaintiff, Defendant Paul Watson received a number of benefits from Plaintiff, including but not limited to access to merchandise bearing Plaintiff's Marks, access to confidential information such as donor lists and fundraising strategies, and access to marketing materials bearing Plaintiff's Marks.

120.    Defendant Paul Watson accepted said benefits.

121.    Defendant Paul Watson has retained such benefits without proper compensation to Plaintiff.

25

122.     Defendant Paul Watson has provided such benefits to Defendants the Captain Paul Watson Foundation and Sea Shepherd Origins without Plaintiff's authorization and without proper compensation to Plaintiff.

123.     As a result, Defendants have been unjustly enriched by Plaintiff and obtained benefits from Plaintiff that they cannot, in good conscience, retain.

## COUNT XI

### INJUNCTION

124.     Plaintiffs repeat and realleges each and every allegation contained in the preceding paragraphs of the Complaint as if they were set forth in full herein.

125.     Plaintiffs will be irreparably harmed if Defendants are not enjoined from using Plaintiff's Marks in connection with their efforts to protect and conserve the world's oceans and marine wildlife.

126.     Plaintiffs do not have an adequate remedy at law for Defendants' ongoing misconduct, and entry of an injunction will serve the public interest.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment in its favor and against Defendants as follows:

1.     That Defendants and their respective officers, agents, servants, distributors, affiliates, employees, attorneys and representatives and all those in privity or acting in concert with the Defendants, and each of them, be permanently enjoined and restrained from, directly or indirectly:

(a)     Using the name and mark SEA SHEPHERD or any other marks confusingly similar thereto, alone or in combination with other words, names, styles, titles, designs, or marks in connection with the provision of any goods and services;

26

(b)     Using the Jolly Roger Logo or any other marks confusingly similar thereto, alone or in combination with other words, names, styles, titles, symbols, designs, or marks in connection with the provision of any goods and services;

(c)     Using in any other way any other marks or designations so similar to the aforesaid Plaintiff's Marks as to be likely to cause confusion, mistake or deception;

(d)     Falsely designating the origin, sponsorship, or affiliation of the Defendants' goods or services in any manner;

(e)     Otherwise competing unfairly with Plaintiff in any manner;

(f)     Using any words, names, styles, designs, titles, designations, or marks which create a likelihood of injury to the business reputation of Plaintiff and the goodwill associated therewith;

(g)     Using any trade practices whatsoever including those complained of herein, which tend to unfairly compete with or injure Plaintiff's business and goodwill pertaining thereto; and

(g)     Continuing to perform in any manner whatsoever any of the acts complained of in this complaint.

2.     That the Defendants be required to pay to Plaintiff compensatory damages for the injuries sustained by Plaintiff in consequence of the unlawful acts alleged herein and that such damages be trebled pursuant to 15 U.S.C. § 1117 because of the willful and unlawful acts as alleged herein.

3.     That the Defendants be required to account for and pay over to Plaintiff all gains, profits and advantages derived by them from the unlawful activities alleged herein.

4.     That Defendants be required to deliver for destruction all stationery, signs, advertisements, promotional flyers, cards, brochures, hard copy promotional materials and any other written materials which bear the trademark or service mark SEA SHEPHERD or the Jolly

27

Roger Logo any other marks confusingly similar thereto together with all plates, molds, matrices and other means and materials for making or reproducing the same.

5.    That Defendants be required to remove any and all online use of the mark SEA SHEPHERD or the Jolly Roger Logo any other marks confusingly similar thereto including via any of their websites, social media accounts or otherwise, and that Defendants be required to take steps necessary to remove any use of the mark SEA SHEPHERD or the Jolly Roger Logo any other marks confusingly similar thereto that is associated with any of Defendants' products or services or on any third party website or online source.

6.    That Defendants be required to forfeit or cancel the domain name seashepherdorigins.org, or, alternatively, that Defendants be required to transfer the domain name Plaintiff.

7.    That the Defendants be required to pay to Plaintiff all of its litigation expenses, including but not limited to reasonable attorneys' fees and the costs of this action.

8.    That Plaintiff be awarded such other and further relief as the Court may deem just and proper.

28

4871-4288-0836.v6

## JURY DEMAND

Plaintiff demands trial by jury of all claims and defenses in this action so triable.

Respectfully Submitted,

Dated: December 29, 2022          By:   /s/ Walter Judge, Jr.
                                        Walter E. Judge, Jr.
                                        Downs Rachlin Martin PLLC
                                        Attorneys for Plaintiff
                                        199 Main Street
                                        P.O. Box 190
                                        Burlington, VT  05402
                                        802-863-2375
                                        wjudge@drm.com

*Of counsel not yet admitted:*

Abigail J. Remore, Esq. (*pro hac vice pending*)
Lindsay A. Dischley, Esq. *(pro hac vide pending)*
CHIESA SHAHINIAN & GIANTOMASI PC
One Boland Drive
West Orange, NJ 07052
ajremore@csglaw.com
ldischley@csglaw.com
(973) 325-1500

4871-4288-0836.v6

## VERIFICATION

I hereby verify the truth and accuracy of the facts alleged in this Verified Complaint, based upon my personal knowledge and information, believing such to be true.

Pritam Singh
President
Sea Shepherd Conservation Society

## NOTARY ACKNOWLEDGEMENT

STATE OF Vermont
COUNTY OF Windsor                , SS.

On this _28_ day of December, 2022, personally appeared Pritam Singh, known to me, or satisfactorily proven to be the person who is the signatory to the foregoing, and made oath that the foregoing instrument, subscribed by him, is true.

Before me,

Notary Public

My commission expires:



1-31-23

30