## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF VERMONT

SEA SHEPHERD CONSERVATION SOCIETY,

                    Plaintiff

          v.

PAUL WATSON, THE CAPTAIN PAUL
WATSON FOUNDATION, SEA SHEPHERD
ORIGINS,

                    Defendants.

Case No. 2:22-cv-00227-wks

**DEFENDANTS SEA SHEPHERD ORIGINS' AND CAPTAIN PAUL WATSON
FOUNDATION'S MOTION TO DISMISS THE COMPLAINT FOR LACK OF
<u>PERSONAL JURISDICTION AND INCORPORATED MEMORANDUM</u>**

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ................................................................................................ 1

FACTUAL BACKGROUND .............................................................................. 3

    A.  The Complaint's Conclusory And Unfounded Allegations Concerning Personal Jurisdiction Over The Nonresident Defendants ................................................. 3

    B.  Sea Shepherd Origins Is A French Entity With No Significant Contacts In Vermont ..... 4

    C.  The Foundation Is A Delaware Entity With No Significant Contacts In Vermont .......... 5

ARGUMENT ....................................................................................................... 7

   I.  Legal Standard ........................................................................................ 7

   II.  The Court Lacks Personal Jurisdiction Over The Nonresident Defendants ....................... 9

    A.  Plaintiff Has Not Alleged Contacts Sufficient To Show General Jurisdiction Over The Nonresident Defendants ................................................. 11

    B.  Plaintiff Also Has Not Alleged Contacts Sufficient To Show Specific Jurisdiction Over The Nonresident Defendants .......................................... 16

    C.  Jurisdiction Over The Nonresident Defendants Would Not Be Reasonable ............. 19

CONCLUSION ................................................................................................... 21

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                  **Page(s)**

*Balanced Body, Inc. v. Teague Pilates, Inc.*,
 2011 WL 1211573 ...........................................................................................18

*Bertolini-Mier v. Upper Valley Neurology Neurosurgery, P.C.*,
 No. 5:16-CV-35, 2016 WL 7174646 (D. Vt. Dec. 7, 2016) ...............................7, 9, 14, 15, 16

*Best Van Lines, Inc. v. Walker*,
 490 F.3d 239 (2d Cir. 2007).............................................................................10

*Brown v. Lockheed Martin Corp.*,
 814 F.3d 619 (2d Cir. 2016).............................................................................11

*Burger King Corp. v. Rudzewicz*,
 471 U.S. 462 (1985).......................................................................................16

*Daimler AG v. Bauman*,
 571 U.S. 117 (2014).......................................................................................11

*Dakota Beef, LLC v. Pigors*,
 445 F. Supp. 2d 917 (N.D. Ill. 2006) ................................................................14

*DH Servs., LLC v. Positive Impact, Inc.*,
 No. 12 CIV. 6153 RA, 2014 WL 496875 (S.D.N.Y. Feb. 5, 2014) ........................15

*Dodge v. Manchester Police Dep't*,
 No. 5:13-CV-228, 2014 WL 4825632 (D. Vt. Sept. 25, 2014) .........................13, 14

*Girl Scouts of U.S. v. Steir*,
 102 F. App'x 217 (2d Cir. 2004) ......................................................................15

*Hegemann v. M & M Am., Inc.*,
 No. 2:18-CV-00064, 2018 WL 4502181 (D. Vt. Sept. 20, 2018) ...........................9

*Helio Logistics, Inc. v. Apoorva Mehta et. Al*,
 Case No. 22-cv-10047 (S.D.N.Y. Jan. 3, 2023).................................................8, 9

*Hertz Corp. v. Friend*,
 559 U.S. 77 (2010).........................................................................................11

*Hood v. Ascent Med. Corp.*,
 691 F. App'x 8 (2d Cir. 2017) .........................................................................11

*Jenkins v. Miller*,
 983 F. Supp. 2d 423 (D. Vt. 2013)...........................................10, 12, 13, 14, 16, 19

*Metro. Life Ins. Co. v. Robertson-Ceco Corp.*,
    84 F.3d 560 (2d Cir. 1996)..............................................................................8, 19, 20

*Motus, LLC v. CarData Consultants, Inc.*,
    23 F.4th 115 (1st Cir. 2022)............................................................................17, 18

*OneWest Bank, N.A. v. Melina*,
    827 F.3d 214 (2d Cir. 2016)...................................................................................11

*In re Rationis Enterprises, Inc. of Panama*,
    261 F.3d 264 (2d Cir. 2001)...............................................................................7, 8

*In re Terrorist Attacks on Sept. 11, 2001*,
    714 F.3d 659 (2d Cir. 2013)........................................................................9, 10, 14

*Visual Scis., Inc. v. Integrated Commc'ns Inc.*,
    660 F.2d 56 (2d Cir. 1981)......................................................................................8

*Weitzman v. Stein*,
    897 F.2d 653 (2d Cir. 1990)...............................................................................8, 9

**Other Authorities**

Federal Rule of Civil Procedure 12(b)(2) ............................................................1, 7, 8

Pursuant to Federal Rule of Civil Procedure 12(b)(2), Defendants Sea Shepherd Origins and the Captain Paul Watson Foundation ("the Foundation," and collectively with Sea Shepherd Origins, the "Nonresident Defendants") file this Motion to Dismiss the Complaint for Lack of Personal Jurisdiction and supporting Memorandum of Law.[1]

## INTRODUCTION

The Complaint [ECF No. 1, "Compl."] filed by Plaintiff Sea Shepherd Conservation Society ("Plaintiff" or "SSCS") alleges eleven causes of action against the Nonresident Defendants and Defendant Captain Paul J. Watson, collectively.  The Complaint does not segregate the alleged wrongdoing by each Defendant, but rather associates the alleged wrongdoing to all Defendants together.  For example, in the opening paragraph of the Complaint, Plaintiff states that this action and request for immediate injunctive relief arises out of "***Defendants'*** misappropriation and infringement of Plaintiffs trademarks and service marks," and in every Count in the Complaint, Plaintiff states "***Defendants***" are engaging in the alleged wrongdoing and "***Defendants'***" conduct has caused harm to Plaintiff.

Putting aside the baselessness of Plaintiff's claims and request for injunctive relief as set forth in more detail in Defendants' Opposition to Plaintiff's Motion for Preliminary Injunction and Defendants' Motion to Strike the Complaint, this action cannot get off the ground because the Court does not have personal jurisdiction over the Nonresident Defendants.  As described below in greater detail, Plaintiff has not met its burden of alleging facts in the Complaint showing the Nonresident Defendants' minimum contacts with Vermont sufficient for the Court to have either general or specific jurisdiction over them, or that it would be reasonable under the traditional

---

[1] Along with this Memorandum of Law, Defendants also submit the supporting Declaration of Lamya Essemlali (Ex. A, "Essemlali Decl.") and Declaration of Omar Todd (Ex. B, "Todd Decl.").

notions of fair play and substantial justice to force the Nonresident Defendants' to litigate this action in Vermont.

Indeed, Plaintiff's allegations as to personal jurisdiction over the Nonresident Defendants are sparse, conclusory, and plainly unsupported by reality. Specifically, Plaintiff has not met its burden or alleged facts showing the Nonresident Defendants' "continuous and systematic" activity in Vermont, such that it is their "home" State or that they have "purposefully directed activities" at Vermont residents. And Plaintiff can never allege such facts. As shown in the accompanying Essemlali and Todd Declarations, neither of the Nonresident Defendants is incorporated in Vermont (Sea Shepherd Origins is incorporated in France and the Foundation is incorporated in Delaware); neither has its principal place of business in Vermont (Sea Shepherd Origins is located in France and the Foundation is located in Delaware); neither has facilities, offices, property, or a registered agent in Vermont; and neither even operates out of Vermont (Sea Shepherd Origins operates from France and the Foundation operates from the United Kingdom and Australia). Moreover, neither of the Nonresident Defendants purposefully targets Vermont residents for support or donations. In fact, barely any Vermont residents have visited the websites of the Nonresident Defendants or made donations to the Nonresident Defendants. The only alleged connection of the Nonresident Defendants to Vermont is Defendant Watson. But as shown below, the fact that Defendant Watson (who is not an executive of the Foundation and is only one of the five founders and executives of Sea Shepherd Origins) is a resident of Vermont is far from enough to establish general or specific jurisdiction over the Nonresident Defendants.

Even assuming minimum contacts exist to justify the Court's exercise of general or specific jurisdiction over the Nonresident Defendants, dismissal of this action as against the Nonresident Defendants is still appropriate because it would not be reasonable or fair to have them come to

Vermont to defend this baseless lawsuit.  Indeed, an analysis of the "reasonableness" factors established by the courts weigh in favor of dismissal, especially considering that even Plaintiff's "home" is not in Vermont and nearly all of the party witnesses and documents in this case are located outside Vermont.

## FACTUAL BACKGROUND[2]

### A.   The Complaint's Conclusory And Unfounded Allegations Concerning Personal Jurisdiction Over The Nonresident Defendants

In the Complaint, Plaintiff makes the following conclusory and baseless statements concerning the Court's personal jurisdiction over the Nonresident Defendants.  With respect to Sea Shepherd Origins, Plaintiff alleges that *"[u]pon information and belief*," Sea Shepherd Origins is a "newly formed organization, entity, d/b/a, alliance, conspiracy," or coalition, movement, and/or partnership, "led, conceived and controlled by Paul Watson" and comprised of "Paul Watson, the Captain Paul Watson Foundation, and other non-profit organizations and/or individuals previously affiliated with Plaintiff," such as the "President of Sea Shepherd France," "Director of Sea Shepherd United Kingdom," and a "former Director" of Plaintiff.  Compl. ¶ 5 (emphasis added).  As for the Foundation, Plaintiff alleges that it is "an entity organized and existing under the laws of the State of Delaware," that "*on information and belief*, is operated by Watson in the state of Vermont."  *Id.* ¶ 4 (emphasis added).

Plaintiff then lumps ***all three Defendants*** together and parrots the legal elements relevant to personal jurisdiction by stating:

> This Court has personal jurisdiction over the parties to this action because (i) Plaintiff's claims arise in this judicial district; (ii) each party does business in this judicial district: (iii) Plaintiff's claims are related to Defendants' contacts with this

---

[2] The Nonresident Defendants only discuss herein the facts relevant to the personal jurisdiction issue.  For a more complete picture of the facts relevant to the Complaint, the Nonresident Defendants refer the Court to their Opposition to Plaintiff's Motion for a Preliminary Injunction, the Defendants' Motion to Strike the Complaint, and the Declarations submitted in support of both.

judicial district; (iv) Defendants have purposefully availed themselves of the privilege of conducting business activities within the State of Vermont and in this judicial district; and (v) in light of the foregoing, the exercise of personal jurisdiction over Defendants in this judicial district comports with Vermont law and with traditional notions of fair play and substantial justice.

*Id.* ¶ 8.

Plaintiff makes these conclusory jurisdictional statements without any factual support, without indicating which bases apply to which specific Defendant, and without any explanation of the separate Defendants' purported actions in Vermont. Notably, the word "Vermont" does not appear anywhere in the Complaint after Paragraph 8. In any event, as described herein, Plaintiff's allegations concerning personal jurisdiction over the Nonresident Defendants are unfounded and contrary to reality.

**B.**   **Sea Shepherd Origins Is A French Entity With No Significant Contacts In Vermont**

Sea Shepherd Origins is a non-for-profit entity organized and registered in France. *See* Essemlali Decl. ¶ 2. Its mailing address is 139 Rue du Faubourg Saint-Denis, 75010 -- Paris, France. *See id.* ¶ 4. Sea Shepherd Origins has no facilities or offices in Vermont. *See id.* ¶ 5. It is not registered to do business in Vermont, it does not own or lease real property in Vermont, it has no registered agent for service of process in Vermont, and it pays no Vermont state taxes. *See id.* ¶¶ 6–9.

Sea Shepherd Origins is not "led, conceived and controlled by Paul Watson" as erroneously alleged by Plaintiff. *See id.* ¶ 10. Instead, Sea Shepherd Origins is an international coalition that was established by the heads of several of the independent international Sea Shepherd entities, including Lamya Essemlali (President of Sea Shepherd France), Robert Darran Read (Chief Operating Office of Sea Shepherd UK), Nathalie Nazareth Cote Gil (CEO of Sea Shepherd Brazil), as well as by Defendant Watson (former Director of SSCS) and Clementine Pallanca (a former Director of SSCS), all of whom wished to start a new organization that remained true to the original

spirit and value of Sea Shepherd and its global movement.  *See id.*  These five individuals, four of whom are not even citizens of the United States (*e.g.*, Essemlali, Read, Gil, and Pallanca) also comprise either the board or management of Sea Shepherd Origins.  *See id.*  Presently, the entities that are part of Sea Shepherd Origins are Sea Shepherd France, Sea Shepherd UK, Sea Shepherd Brazil, Sea Shepherd New Caledonia, Sea Shepherd Hungary and the Foundation.  *See id.* ¶ 12.  Thus, only one of the entities of Sea Shepherd Origins is located in the Unities States and ***none***  is located in Vermont.  *See id.*

Equally unfounded is Plaintiff's contention that Sea Shepherd Origins has "purposefully availed [itself] of the privilege of conducting business activities within the State of Vermont and in this judicial district."  Compl. ¶ 8.  As set forth in the Essemlali Declaration, although Sea Shepherd Origins' website is accessible worldwide, nearly all of its website traffic is from outside the United States and there is virtually no website traffic in Vermont.  *See* Essemlali Decl. ¶ 17.  Specifically, data derived from Shepherd Origins' website shows that out of the 34,991 visits to the website since its formation and through January 20, 2023, almost 63% of visits were from France (25,885) and less than 6% (1,859) were from the United States.  *See id.* ¶ 18.  Of the 1,859 visits from individuals in the United States, ***only fifteen (15) can be directly traced to the State of Vermont***.  *See id.*  Likewise, visitors to the Sea Shepherd Origins website also have the opportunity to sign their commitment to support the core values of the organization.  *See id.* ¶ 19.  Presently, 10,300 signatures have been received, only 107 (1%) of which are from the United States—and there is ***no indication that any of those are from the State of Vermont***.  *See id.*  As for donations, Sea Shepherd Origins is ***not aware of a single Vermont resident who has made a donation*** via the Sea Shepherd Origins website to the affiliated entities.  *See id.* ¶ 20.

**C.**     **The Foundation Is A Delaware Entity With No Significant Contacts In Vermont**

Contrary to Plaintiff's unsupported contention, the Foundation is not "operated by Watson

in the state of Vermont." Compl. ¶ 4.  To begin with, the Foundation is a non-for-profit corporation incorporated and registered in the State of Delaware, not Vermont.  *See* Todd Decl. ¶ 2.  Its registered office and mailing address are both at 16192 Coastal Highway, Lewes, Delaware 19958. *See id.* ¶ 4.  The Foundation does not have facilities or offices in Vermont, is not registered to do business in Vermont, does not own or lease real property in Vermont, has no registered agent for service of process in Vermont, and pays no Vermont state taxes.  *See id.* ¶¶ 6–10.  Instead, the Foundation is operated from offices in the United Kingdom and Australia.  *See id.* ¶ 5.

As for the management of the Foundation, the Foundation presently has two members of its Board of Directors: Omar Todd and Clementine Pallanca, both of whom are not residents of Vermont.  *See id.* ¶ 11.  Defendant Watson is ***not*** a Board member of the Foundation, has never been a Board member of the Foundation, and does not have any executive or management position with the Foundation.  *See id.* ¶¶ 12–13.

Equally unfounded is Plaintiff's contention that the Foundation has "purposefully availed [itself] of the privilege of conducting business activities within the State of Vermont and in this judicial district."  Compl. ¶ 8.  As set forth in the Todd Declaration, the Foundation's website permits individuals to make donations supporting the mission of the Foundation, purchase merchandise, and/or sign up as a volunteer to work for the Foundation.  *See* Todd Decl. ¶ 18.  The website was created by a New York company and is operated by persons located in Australia and the United Kingdom, not Vermont.  *See id.* ¶ 16.  Moreover, the supplier of the merchandise sold on the website is a United Kingdom company and the sold merchandise is shipped from the United Kingdom to the customer.  *See id.* ¶ 20.  Of note, the merchandise sold on the website contains newly created logos that prominently display Defendant Watson's name and do not include the phrase "Sea Shepherd" anywhere on the logos.  *Id.* ¶ 19.

While the Foundation's website is accessible worldwide, the Foundation does not and has never specifically targeted Vermont to increase its website traffic, solicit donations, or engage in any other activities. *See id.* ¶ 21. Since the Foundation's website was formed and through January 15, 2023, there have been approximately 307 customers who have purchased merchandise from the Foundation website. *See id.* ¶ 22. ***Only 4 of those customers were from Vermont, for a total value of $168.91***. *See id.* Moreover, the Foundation has received approximately 3,021 donations, of which 554 are from the United States. *See id.* ¶ 23. ***Only 4 of those donations are from individuals with a Vermont address, for a total of $273.37***. *See id.* In other words, ***less than 0.013%*** of the Foundation's customers and donors are from Vermont. *See id.* As for volunteers who have applied to work with the Watson Foundation, ***only one (1) of 300*** applicants to volunteer listed a Vermont address. *See id.* ¶ 24.

## ARGUMENT

### I.   Legal Standard

A party may move to dismiss an action for lack of personal jurisdiction under Rule 12(b)(2) of the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 12(b)(2). "The requirement that jurisdiction be established as a threshold matter springs from the nature and limits of the judicial power of the United States and is inflexible and without exception." *In re Rationis Enterprises, Inc. of Panama*, 261 F.3d 264, 267 (2d Cir. 2001) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998)). "Without personal jurisdiction over a defendant, the court lacks the power to enter a valid order affecting the rights of that defendant." *Bertolini-Mier v. Upper Valley Neurology Neurosurgery, P.C.*, No. 5:16-CV-35, 2016 WL 7174646, at *2 (D. Vt. Dec. 7, 2016). This is particularly true when, as here, the Plaintiff seeks immediate injunctive relief. *See In re Rationis Enterprises, Inc. of Panama*, 261 F.3d 264, 270 (2d Cir. 2001) ("A court may not grant a final, or even an interlocutory, injunction over a party over whom it does not have

personal jurisdiction.").

"On a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of showing that the court has jurisdiction over the defendant." *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 566 (2d Cir. 1996). Ordinarily, "in absence of a full-blown hearing on the merits," a plaintiff could survive dismissal by making a "prima facie showing that [the] district court had jurisdiction under a long-arm statute"—but a "prima facie showing of jurisdiction **will not suffice**, **however, where a plaintiff seeks preliminary injunctive relief**." *Visual Scis., Inc. v. Integrated Commc'ns Inc.*, 660 F.2d 56, 58–59 (2d Cir. 1981) (emphasis added). The requested injunction makes a difference: when a court considers a motion to dismiss in a case without an injunction request, the court can accept a prima facie showing of jurisdiction to "permit [the] issues to be litigated," because the court can choose to later conduct an evidentiary hearing on jurisdiction—as long as jurisdiction is ultimately proven before the court enters any orders on the merits. *Weitzman v. Stein*, 897 F.2d 653, 659 (2d Cir. 1990). But a prima facie showing is "not sufficient to permit the entry of a preliminary injunction" because an injunction restrains a defendant and becomes an instantly appealable order. *Id.* As such, a court "must have in personam jurisdiction over a party before it can validly enter even an interlocutory injunction against him." *Id.*

Put simply, this Court may not enter an injunctive order against the Nonresident Defendants "without determining that [Plaintiff] has established at least a reasonable probability of ultimate success on the question of the court's in personam jurisdiction over [the Nonresident Defendants]." *Weitzman*, 897 F.2d at 659; *see also Opinion & Order* [ECF No. 46], *Helio Logistics, Inc. v. Apoorva Mehta et. Al*, Case No. 22-cv-10047 (S.D.N.Y. Jan. 3, 2023) (applying *Weitzman* and dissolving preliminary injunction upon finding that the plaintiff did not meet "**the**

*heightened standard for personal jurisdiction* on a request for interlocutory relief" because the plaintiff's allegations "throughout its pleadings" and "offered at the [h]earing" did not show "a reasonable probability of ultimate success on this issue") (emphasis added).

As demonstrated below, Plaintiff has not met its burden and established a reasonable probability of ultimate success on the issue of the Court's personal jurisdiction over the Nonresident Defendants.  In fact, Plaintiff has not even made a prima facia showing of personal jurisdiction over the Nonresident Defendants under Vermont's long-arm statute.  Thus, the Court must dismiss the Complaint in its entirety as to the Nonresident Defendants for lack of personal jurisdiction.

## II.    The Court Lacks Personal Jurisdiction Over The Nonresident Defendants

Courts must look "to the law of the forum state to determine whether a federal district court has personal jurisdiction over a foreign corporation."  *Hegemann v. M & M Am., Inc.*, No. 2:18-CV-00064, 2018 WL 4502181, at *2 (D. Vt. Sept. 20, 2018).  The jurisdictional analysis requires "applying Vermont's state long-arm statute first, followed by the traditional due process analysis."  *Bertolini-Mier*, 2016 WL 7174646, at *2.  Notably, Vermont's long-arm statute's "clear policy" is to permit jurisdiction over defendants "to the full extent permitted by the Due Process Clause."  *Id.*  Thus, the due process analysis is the "only part necessary in Vermont (as opposed to other states that may also require independent satisfaction of separate long-arm statute provisions)."  *Id.* (citing *In re Roman Cath. Diocese of Albany, New York, Inc.*, 745 F.3d 30, 38 (2d Cir. 2014) (stating that Vermont merges the two prongs of jurisdictional analysis to only focus on the due process analysis)).

Applying such due process analysis, "a plaintiff must allege (1) that a defendant has 'certain minimum contacts' with the relevant forum, and (2) that the exercise of jurisdiction is reasonable in the circumstances."  *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 673 (2d

Cir. 2013).   In determining whether a defendant has the necessary "minimum contacts," a "distinction is made between 'specific' and 'general' personal jurisdiction." *Id.*   Specific jurisdiction "exists when a State exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum" and "a court's general jurisdiction, on the other hand, is based on the defendant's general business contacts with the forum state," and it permits a court to exercise jurisdiction "where the subject matter of the suit is unrelated to those contacts." *Jenkins v. Miller*, 983 F. Supp. 2d 423, 442 (D. Vt. 2013) (Sessions III, J.) (citing *Metro. Life*, 84 F.3d at 567–68).   When a court determines whether it has jurisdiction over an out-of-state defendant under the Due Process Clause, it "must evaluate the 'quality and nature[ ]' . . . of the defendant's contacts with the forum state under a totality of the circumstances test." *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 242 (2d Cir. 2007); *see also Jenkins*, 983 F. Supp. at 442 (Sessions III, J.) (finding the "strength of the contacts with the forum" must be viewed under the totality of circumstances).

After finding sufficient minimum contacts to justify the exercise of personal jurisdiction, the Court must then determine the "reasonableness" of exercising jurisdiction over the defendant: "whether the assertion of personal jurisdiction comports with 'traditional notions of fair play and substantial justice.'" *Id.*   The reasonableness factors include: (1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies.  *See id.*

As shown below, applying the foregoing due process analysis to the facts here, the Court can easily conclude that Plaintiff has not met its burden to establish the Court's general or specific

jurisdiction over the Nonresident Defendants, nor has it met its burden to show that jurisdiction over the Nonresident Defendants would be reasonable and consistent with "traditional notions of fair play and substantial justice."

### A.    Plaintiff Has Not Alleged Contacts Sufficient To Show General Jurisdiction Over The Nonresident Defendants

A foreign entity is only subject to general jurisdiction in a state where that entity's "affiliations with the State are so ***continuous and systematic*** as to render it essentially ***at home*** in the forum state." *Hood v. Ascent Med. Corp.*, 691 F. App'x 8, 9–11 (2d Cir. 2017) (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 139 (2014) (holding that foreign corporations may not be subject to general jurisdiction just because they have an in-state affiliate or subsidiary)) (emphasis added).  For a foreign / non-resident entity (like the Nonresident Defendants), the place of incorporation and principal place of business are paradigm bases . . . for general jurisdiction." *Daimler*, 571 U.S. at 137 (quotation marks omitted).

A company's principal place of business is "the place where a corporation's officers direct, control, and coordinate the corporation's activities." *Hertz Corp. v. Friend*, 559 U.S. 77, 92–93 (2010).  "In practice, it should normally be the place where the corporation maintains its headquarters—provided that the headquarters is the actual center of direction, control, and coordination, *i.e.*, the nerve center." *OneWest Bank, N.A. v. Melina*, 827 F.3d 214, 218 (2d Cir. 2016) (citing *Hertz*, 559 U.S. at 93).  The Second Circuit is clear that a company's "local activity" must be assessed "not in isolation, but *in the context of the company's overall activity*," requiring an "appraisal" of activities "nationwide and worldwide." *Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 637, 629 (2d Cir. 2016) (emphasis in original).  A company can only be considered "essentially at home" outside of "where it is incorporated or maintains its principal place of business" in an "exceptional" situation. *Id.* at 627.

11

Additionally, courts in this District have consistently rejected finding general jurisdiction over nonresident companies when they have few or no contacts with Vermont, like the Nonresident Defendants here. A prime demonstration of this analysis is in this Court's decision in *Jenkins v. Miller*, where the plaintiffs brought suit against several nonresident entities, including Liberty University (a Virginia institution with its principal place of business in Virginia) and Christian Aid Ministries (an Ohio nonprofit corporation with its principal place of business in Ohio). *See* 983 F. Supp. 2d at 442–44 (Sessions III, J.). This Court held that the plaintiffs failed to even satisfy a prima facie showing of jurisdiction through their allegations:

- For the university, the plaintiffs alleged that the university had continuous and systematic contacts with Vermont because it enrolled twenty-nine tuition and fee-paying students from Vermont and an unknown number of online students from Vermont; marketed itself to potential students in Vermont; solicited donations through a website accessible in Vermont; and students participated in athletics in Vermont. *See id.* at 442.

  Despite these contacts, the Court held there was no general jurisdiction over the university because it was not incorporated in Vermont; did not have its principal place of business in Vermont; had no facilities, offices, mailing address, or staff in Vermont; was not registered to do business in the state; did not own or lease real property in Vermont; had no registered agent for service in Vermont; and paid no State taxes. *See id.* The Court explained that although the university "derive[d] some revenue from students from Vermont who attend the university, the total number of these students is relatively small" compared to the university's 12,000 residential students, therefore the revenue from Vermont students "is correspondingly small." *Id.*

- For the Ohio nonprofit, the plaintiffs alleged that it had continuous and systematic contacts with Vermont because it distributed aid and literature across the U.S. and other countries; employed pastors and relief workers worldwide including in Vermont; solicited donations through its website accessible in Vermont and received about $8,000 annually from Vermont donors; and some of its employees traveled to the State. *See id.* at 442.

  But the Court *still* rejected finding general jurisdiction over that nonprofit because it was headquartered in Ohio; had staff and centers in other states and countries, but no operations, staff, or offices in Vermont; was not registered to do business in Vermont; did not own or lease property in Vermont; did not pay taxes there; did not employ Vermont residents; and had not provided disaster relief in Vermont. *See id.* at 443. Plus, the Court found the "amount of donations received from Vermont residents [was] very small." *Id.*

12

Applying this Court's instructive reasoning from *Jenkins* here, Plaintiff's allegations are woefully inadequate to establish general jurisdiction—and even more so because Plaintiff must meet a higher standard than a prima facie showing because it is seeking injunctive relief.  Just like the defendants in *Jenkins*, the Nonresident Defendants here are not incorporated in Vermont; do not have their principal place of business in Vermont; are not registered to do business in Vermont; do not have offices in Vermont; do not own or lease real property in Vermont; do not have a registered agent in Vermont; and do not pay Vermont state taxes.  *See* Essemlali Decl. ¶¶ 5–9; Todd Decl. ¶¶ 6–10.

Moreover, neither Sea Shepherd Origins nor the Foundation markets itself to Vermont residents (even though the university in *Jenkins* did market to Vermont, and still did not have sufficient contacts).  *See* Essemlali Decl. ¶ 17; Todd Decl. ¶ 21.  As described above, although the Nonresident Defendants can receive donations via their website from individuals all over the world, Sea Shepherd Origins is not aware of *any* donations from Vermont and the Foundation has only identified *four* donations from Vermont out of 3,021 donations (0.013%).  *See* Essemlali Decl. ¶ 20; Todd Decl. ¶ 23.  Thus, the Nonresident Defendants' activity in Vermont is far from "continuous and systematic."  *Jenkins*, 983 F. Supp. 2d at 444 (citing *Morton Grove Pharm., Inc. v. Nat'l Pediculosis Ass'n, Inc.,* 485 F. Supp. 2d 944, 948 (N.D. Ill. 2007) (holding that an environmental group's distribution of newsletters, solicitation and receipt of donations, maintenance of an interactive webpage, and receipt of grants from a forum-based foundation were not continuous and systematic contacts)).

Other decisions in this District have followed *Jenkins* and similarly concluded that "[d]eriving a relatively small amount of revenue from individuals residing in the forum state does not on its own render a foreign entity 'essentially at home' in the forum state."  *Dodge v.*

13

*Manchester Police Dep't*, No. 5:13-CV-228, 2014 WL 4825632, at *6 (D. Vt. Sept. 25, 2014) (citing *Jenkins*).  In *Dodge*, the court held it did not have general jurisdiction over a New Hampshire credit union that did not purposefully solicit business or advertise in Vermont, even though 3,801 members out of 181,637 members of the union lived in Vermont and provided revenue.  *See id.*  (holding that "the relatively small number of SCU members who happen to reside in Vermont are not sufficient to render SCU 'essentially at home' in Vermont").

But even where revenue from a state is significant and the company's contacts are "substantial and longstanding," that *still* may "not qualify as exceptional" contacts to render the defendant "essentially at home."  As the District Court in *Bertolini-Mier* found:

> [Nothing about the following contacts was particularly "exceptional" to warrant general jurisdiction over a New Hampshire company, including] APD's registration to do business in Vermont, advertising in Vermont, ownership of trade names registered in Vermont, a service area that includes multiple Vermont towns, use of medical providers who are licensed in Vermont, use of the Vermont court system, and operation of a clinic in Vermont between 2011 and 2016 that generated several million dollars in revenues.

2016 WL 7174646, at *5.  Here, the Nonresident Defendants' contacts do not come anywhere near the substantial contacts in *Bertolini-Mier*, where the Vermont District Court still found insufficient contacts to establish general jurisdiction.

Plaintiff may attempt to argue that because the Nonresident Defendants' websites are accessible from Vermont, general jurisdiction over them exists.  But that is not the law.  *See, e.g.*, *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d at 680 ("[W]e conclude that the alleged use of correspondent bank accounts and the maintenance of a website that allows account holders to manage their accounts are insufficient to support the exercise of general personal jurisdiction."); *see also Dakota Beef, LLC v. Pigors*, 445 F. Supp. 2d 917, 920–21 (N.D. Ill. 2006) (finding maintenance of website which was equipped to take orders from customers but received only two orders from Illinois residents was insufficient to establish jurisdiction).  Indeed, the "mere fact that

14

the [defendant's] website, which invites only limited interactive content, is continuously accessible to [the forum's] residents does not establish the sort of persistent course of conduct in the state fairly to require [the defendant] to answer in [that forum] for their out-of-state actions in maintaining the website." *Girl Scouts of U.S. v. Steir*, 102 F. App'x 217, 220 (2d Cir. 2004); *see also DH Servs., LLC v. Positive Impact, Inc.*, No. 12 CIV. 6153 RA, 2014 WL 496875, at *8 (S.D.N.Y. Feb. 5, 2014) ("Defendant rightly points out that, by subjecting it to personal jurisdiction based on essentially *de minimis* contributions made from a website accessible in any jurisdiction, the Court's ruling could have serious consequences for non-profit organizations.").

Here, less than 6% of visits to Sea Shepherd Origins' website were from the United States (1,859), only *fifteen* of those visits have been traced to Vermont, and no donations have been linked to Vermont. *See* Essemlali Decl. ¶¶ 18, 20.  Similarly, even the Foundation (a U.S. entity) has only had *four* customers from Vermont purchase merchandise and only received *four* donations from Vermont residents through its website. *See* Todd Decl. ¶¶ 22, 23.  Thus, no general jurisdiction can be obtained by way of these websites being available to Vermont residents, as Vermont residents' usage of them can effectively be rounded down to zero percent.

Lastly, other than Plaintiff's conclusory allegations that the Nonresident Defendants conduct business in Vermont (which are contradicted by the Essemlali and Todd Declarations), Plaintiff's jurisdictional allegations seemingly rely on the mere fact that Defendant Watson lives in Vermont.  However, this lone fact is meaningless because (a) Defendant Watson is only one of the five founders of Sea Shepherd Origins (a French entity that is operated from France) and the other four founders are not even citizens of the United States, let alone Vermont; and (b) Defendant Watson does not have any executive, management, or officer position with the Foundation (a Delaware entity operated outside of Vermont).  *See* Essemlali Decl. ¶ 10; Todd Decl. ¶¶ 12, 13.

Moreover, in *Bertolini-Mier*, the New Hampshire company's vice president of human resources and secretary lived in Vermont, the company was registered as a foreign non-profit in Vermont, and it employed approximately 30 physicians and medical providers licensed in Vermont; yet, the District Court *still* held that the New Hampshire company's contacts with Vermont were "mere contacts" and did not constitute an exceptional case justifying general jurisdiction.  2016 WL 7174646, at *1–5.  Thus, the lone fact of Defendant Watson being a resident of Vermont is clearly not enough to establish exceptional contacts to allow this Court general jurisdiction over the Nonresident Defendants.

**B.      Plaintiff Also Has Not Alleged Contacts Sufficient To Show Specific Jurisdiction Over The Nonresident Defendants**

As this Court has previously held, "[s]pecific personal jurisdiction exists when a defendant has **purposefully directed activities** at residents of the forum, and the litigation results from injuries that arise out of or relate to those activities."  *Jenkins*, 983 F. Supp. 2d at 444 (Sessions III, J.) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)) (emphasis added).  Indeed, to establish specific personal jurisdiction, a plaintiff "must plead facts to show that [d]efendants **expressly aimed intentional tortious acts at a Vermont resident**, that her injuries arise out of or relate to those activities, and that [d]efendants knew that the brunt of the injury would be felt in Vermont."  *Id.*  (emphasis added).  The "purposeful availment" requirement ensures that a defendant will not be "haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or third person."  *Burger King*, 471 U.S. at 475.  Where any contacts are "the result of third party activity," those do not supply specific jurisdiction.  *Jenkins*, 983 F. Supp. 2d at 449.

Here, Plaintiff does not allege facts showing that the Nonresident Defendants "purposefully" directed their alleged tortious acts at residents in Vermont.  Plaintiff does not even

16

mention "Vermont" or "this judicial district" after Paragraphs 8 and 9 of the Complaint.  Compl. ¶¶ 8, 9.  In fact, Plaintiff does not tie the alleged wrongdoing by the Nonresident Defendants to any specific state or forum, but instead generally alleges that "Defendants are . . . using, grossly misappropriating, unlawfully exploiting, and profiting off of Plaintiff's exclusive rights in and to Plaintiff's Marks *in SSCS Territory, including the United States*."  *Id.* ¶ 58 (emphasis added); *see also* ¶ 61 ("Defendants' conduct is causing irreparable harm to Plaintiff because Defendants are intentionally interfering with Plaintiff's exclusive right to control the commercial use of Plaintiff's Marks *in SSCS Territory, including the United States*, and the ability to generate current and future fundraising from supporters of SSCS." (emphasis added)).  In other words, Plaintiff, which is not even a Vermont entity, *see* Compl. ¶ 2, has merely alleged harm to itself, with no details as to the Nonresident Defendants' specific actions *in Vermont*.

In the Complaint, Plaintiff claims that "Defendants' unlawful conduct" includes Sea Shepherd Origins and the Foundation being promoted through their respective websites and on various social media platforms.  *See id.* ¶¶ 33, 44.  Putting aside the fact that Plaintiff has not alleged facts showing that such website activity took place in Vermont, this claim is a "dead end" route to purposeful availment.  *Motus, LLC v. CarData Consultants, Inc.*, 23 F.4th 115, 125 (1st Cir. 2022) ("Motus's principal route to purposeful availment runs through CarData's operation of a website that is available to serve Massachusetts residents and its maintenance of offices elsewhere in the United States (Colorado and New York).  This route is a dead end.").  The "mere availability of a primarily informational website is not enough — by itself — to render a defendant susceptible to jurisdiction in a particular forum."  *Id.*  If it were enough, it would "render website operators amenable to suit anywhere within the vast reach of the internet."  *Id.*  Similar to the analysis for general jurisdiction, "[w]hen assessing whether a defendant's commercial operation

17

of a website amounts to purposeful availment, [courts] typically look to factors such as evidence of specific targeting of forum residents and evidence that the website has generated 'substantial revenue from forum residents.'" *Id.*

Here, as in the *Motus* case, "[n]othing in the record indicates that [the Nonresident Defendants] ha[ve] sought to serve [Vermont] residents at all, let alone that [they have] sought to serve [Vermont] residents in particular." *Id.* To the contrary, as set forth in the Essemlali and Todd Declarations, the websites of both Sea Shepherd Origins and the Foundation, both of which are operated outside of Vermont, have barely served Vermont residents. *See* Essemlali Decl. ¶¶ 17–20; Todd Decl. ¶¶ 16–24.

Plaintiff also has failed to prove the "arising or growing out of" element of specific jurisdiction, which provides the "requisite nexus between the defendant, the injuring agency, and the cause of action brought in the forum state." *Balanced Body, Inc. v. Teague Pilates, Inc.*, 2011 WL 1211573, at *2 (D. Vt. March 29, 2011). In *Balanced Body, Inc.*, the Vermont District Court held that the plaintiff's causes of action – for "trademark and trade dress infringement, false designation of origin, unfair competition and false advertising" – did "not grow out of a specific business transaction engaged in within Vermont" because the defendant had only isolated acts of "two sales in Vermont" and "emails to Vermont residents." *Id.* Plaintiff's claims here, many of which are similar to the causes of action in that case, likewise did not grow out of specific business activity in Vermont. As both of the Nonresident Defendants attest in the Essemlali and Todd Declarations, although their websites may be accessible worldwide, neither has ever specifically targeted Vermont to increase their website traffic, solicit donations, or engage in any other activities. *See* Essemlali Decl. ¶ 17; Todd Decl. ¶ 21.

Accordingly, the Court can and should find that Plaintiff has failed to allege facts showing

the minimum contacts necessary for the Court to have specific jurisdiction over the Nonresident Defendants.

**C.**     <u>Jurisdiction Over The Nonresident Defendants Would Not Be Reasonable</u>

Even if sufficient minimum contacts existed to justify the Court's exercise of general or specific jurisdiction over the Nonresident Defendants, the Court should still grant this Motion to Dismiss because the assertion of personal jurisdiction over the Nonresident Defendants would not comport with "traditional notions of fair play and substantial justice." *Jenkins*, 983 F. Supp. 2d at 449. It would not be reasonable to find personal jurisdiction under the circumstances of this particular case. *See id.* The five reasonableness factors, which the Nonresident Defendants assert weigh in favor of dismissal, include:

> the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies.

*Id.* at 449.

Here, the burden that litigating in Vermont would cause on the Nonresident Defendants is clear and heavy. Sea Shepherd Origins' home country is France and the Foundation's home State is Delaware—both are far from Vermont. *See, e.g.*, *Metro. Life Ins. Co.*, 84 F.3d at 573–74 ("Certainly there are many difficulties associated with requiring [the defendant], a Delaware corporation with its principal place of business in Pennsylvania, to defend this suit in Vermont."). Moreover, none of the entities that comprise Sea Shepherd Origins are located or have offices in Vermont, and nearly all of them (other than the Foundation) reside outside the United States. *See* Essemlali Decl. ¶¶ 5, 12. Also, the leadership teams for both Nonresident Defendants are located outside of Vermont, and most are located outside the United States. *See* Essemlali Decl. ¶ 10; Todd Decl. ¶ 11. The only connection to Vermont is Defendant Watson.

19

None of factors (2), (3), and (4) regarding the interests of Plaintiff in obtaining convenient and effective relief, and the efficient administration of justice, favors finding jurisdiction.  Vermont does not appear to have any particular interest in this case, as the acts forming the basis for suit have no material connection to the State.  While sometimes a forum could have an interest in redressing injuries for its citizens occurring outside or within its jurisdiction, *see id.* at 574, no such circumstances exist here.  Plaintiff is incorporated in Oregon with its principal place of business in California; Vermont is simply not the "home" of Plaintiff. *See* Compl. ¶ 2.  Plaintiff also has failed to show how its interests would be better served by forcing the Nonresident Defendants to litigate in Vermont.   Indeed, Plaintiff's own witnesses and documents are located outside of Vermont.  For these reasons, Plaintiff also cannot show how factor (4) favors finding jurisdiction because in "evaluating this factor, courts generally consider where witnesses and evidence are likely to be located."  *Metro. Life Ins. Co.*, 84 F.3d at 574. Lastly, Plaintiff "has not suggested, much less shown, any substantial social policies that would be furthered by permitting this case to be heard in Vermont," and the Nonresident Defendants "can imagine none."  *Id.* at 575.

Accordingly, because Plaintiff has not met its burden of establishing the Nonresident Defendants' minimum contacts with Vermont, and further has not met its burden to show that it would be reasonable under the traditional notions of fair play and substantial justice to force the Nonresident Defendants' to litigate this action in Vermont, the Court can and should find that it does not have personal jurisdiction over the Nonresident Defendants.

## <u>CONCLUSION</u>

For all the foregoing reasons, the Court should grant this motion and dismiss the Complaint as against the Nonresident Defendants for lack of personal jurisdiction.

Dated:  January 23, 2023

By:   <u>*/s/ Matthew B. Byrne*</u>
Matthew B. Byrne
GRAVEL & SHEA PC
76 St. Paul Street, 7th Fl.
P. O. Box 369
Burlington, VT 05402
802-658-0220
mbyrne@gravelshea.com

and

Israel Dahan*
Bruce Baber*
KING & SPALDING LLP
1185 Avenue of the Americas
34th Floor
New York, NY 10036
212-556-2114
idahan@kslaw.com
bbaber@kslaw.com
*pro hac vice admission forthcoming*

*Attorneys for Defendants*