UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT

SEA SHEPHERD CONSERVATION SOCIETY,

    Plaintiff,

  v.

PAUL WATSON, THE CAPTAIN PAUL WATSON FOUNDATION, SEA SHEPHERD ORIGINS,

    Defendants.

Case No. 2:22-cv-00227-wks

## PLAINTIFF SEA SHEPHERD CONSERVATION SOCIETY'S OPPOSITION TO DEFENDANTS' SPECIAL MOTION TO STRIKE THE COMPLAINT

Pursuant to 12 V.S.A. § 1041(b) and Local Rule 7(a)(3), Plaintiff Sea Shepherd Conservation Society ("SSCS" or "Plaintiff") hereby opposes Defendants Paul Watson, The Captain Paul Watson Foundation ("CPWF"), and Sea Shepherd Origins' ("SSO", and collectively, "Defendants") Special Motion to Strike the Complaint (ECF No. 18). In short, this case has nothing to do with suppressing Defendants' free speech or preventing them from expressing fair and truthful criticisms of SSCS to implicate the anti-SLAPP statute. Rather, this case seeks to prevent Defendants from unlawfully using SSCS's trademarks as source indicators for SSO, Watson, and CPWF within the U.S., engaging in unfair and deceptive conduct in the marketplace, and trading on SSCS's longstanding goodwill.

Defendants' ability to publicly comment on marine conservation issues is in no way hindered if they are precluded from infringing on Plaintiff's trademarks, and Plaintiff's claims are not directed to suppressing Defendants' speech or any "expressive use" of SSCS's trademarks. This is evidenced by the fact that Defendants Watson and CPWF have been publicly critical of

SSCS since Watson's resignation from SSCS in July 2022, yet SSCS took no legal action until Watson and CPWF founded SSO and began claiming to be Sea Shepherd to directly compete with SSCS under an identical name.

Even if Defendants could conceivably argue that their speech would somehow be deterred, which they cannot, any such deterrence is not a violation of the Vermont anti-SLAPP statute insofar as Defendants' speech is not the type of speech the anti-SLAPP statute seeks to protect. Accordingly, for the reasons explained below, Defendants' motion falls outside the bounds of Vermont's "anti-SLAPP" statute, 12 V.S.A. § 1041, and further fails to meet its requirements even if it were to apply, and, therefore, should be DENIED.[1]

## I.     The Vermont Anti-SLAPP Statute is Not Implicated in this Case

Vermont's anti-SLAPP statute is simply not at issue in this case.[2] The anti-SLAPP statute applies ***only*** where the lawsuit at issue "aris[es] from the defendant's exercise, in connection with a public issue, of the right to freedom of speech or to petition the government for redress of grievances under the U.S. or Vermont Constitution."[3] 12 V.S.A. § 1041(a).

Indeed, in interpreting the reach of the anti-SLAPP statute, the Vermont Supreme Court has adopted a very narrow construction, given that the statute "attempt[s] to define the proper intersection between two constitutional rights—a defendant's right to free speech and petition, and a plaintiff's right to petition and free access to the courts." Felis, 2015 VT 129, ¶ 41, 200 Vt. at

---

[1] Pursuant to the anti-SLAPP statute, this Opposition closes the briefing on Defendant's motion. 12 V.S.A. § 1041(b).

[2] SSCS submits that this Court should not apply Vermont's anti-SLAPP statute here for the reasons its application in federal court was questioned in Jenkins v. Miller, No. 2:12-cv-184, 2017 WL 4402431, at *30-31 (D. Vt. Sept. 29, 2017).

[3] "SLAPP" stands for "Strategic Lawsuit Against Public Participation." Felis v. Downs Rachlin Martin PLLC, 2015 VT 129, ¶ 1 n. 1, 200 Vt. 465, 133 A.3d 836 (2015).

485, 133 A.3d at 851. As a result, the Vermont Supreme Court identified two particular areas of focus for the statute's application. First, the Court observed

> . . . . the importance of protecting free speech in matters of **"public interest and government decisionmaking," particularly in areas of land use and zoning, permitting and regulatory matters affecting communities, and public health and quality of life**. As explained, "when [citizens] participate [in such matters], they are subject to suit by parties opposed to their interests in public participation." In this way, **parties with financial means are able to use litigation to intimidate others into silence**.

Id. at ¶ 29 (quoting Hearing on S. 103 before Senate Judiciary Committee, 2005–2006 Bien. Sess. (Vt. Mar. 2, 2006)) (internal citations omitted) (bold added for emphasis). Second, the Court recognized that SLAPP lawsuits

> . . . . are lawsuits filed in response to or in retaliation for citizen communication with government entities or employees. People have been sued for testifying before their city councils, zoning commissions, and school boards and for reporting violations of environmental laws to regulatory agencies. **SLAPP suits are intimidating, punishing and expensive for ordinary citizens to fight** . . . . The objective of this bill is to help protect Vermonters' First Amendment rights and to prevent the misuse of the courts as a vehicle to punish people for expressing their opinions on issues of *public interest*.

Id. at ¶ 30 (quoting Report to the House on S. 103 SLAPP–Suit Bill, at 1 (Apr. 11, 2006)) (italics in original) (bold added for emphasis). The Court also reported an incident that it characterized as "the paradigm for the legislation":

> [Twelve] Barnard residents, the zoning board, and others were targets of a suit brought by a new landowner whose property development projects were impacting a public right of way. The residents signed a petition with Barnard's zoning board of adjustment appealing the landowner's permit. A retaliatory suit was served on those Barnard citizens on Christmas Eve. The right to petition is expressly recognized under Vermont law. Nevertheless, these residents decided to "cut their loses" [sic] and settle the case on terms dictated by the plaintiffs. **They simple [sic] couldn't**

3

> **afford to pay the enormous costs of defending/litigating their constitutional rights**.

Id. at ¶ 30 n. 9 (quoting Report to the House on S. 103, at 1) (bold added for emphasis). Against this backdrop, the Supreme Court held that the statute "should be construed as limited in scope" and that "great caution should be exercised in its interpretation." Id. at ¶ 41.

Since deciding Felis, the cases where the Vermont Supreme Court has upheld the granting of a special motion to strike under the Vermont anti-SLAPP statute are readily distinguishable from the present case, making it clear the statute does not apply here.[4] In Chandler v. Rutland Herald Pub., a plaintiff brought a libel claim against a newspaper for publishing an article that alleged the plaintiff had made false accusations about public corruption by law enforcement and commented on plaintiff's prior criminal charges. No. 2015-265, 2015 WL 7628687, at *2 (Vt. Nov. 2015) (unpub.). The trial court concluded, and the Vermont Supreme Court agreed, that "a garden-variety newspaper article describing criminal charges arising out of public confrontations between a member of the public and public officials" was "an issue of public interest made in a public forum." Id. at *1-2. Similarly, in another libel case, Bock v. Smith, a newspaper was sued for publishing letters regarding a state political candidate's violent criminal past, unfitness for public office, dismissal from law school, and removal from local businesses due to disruptive behavior. No. 2017-176, 2017 WL 5989987, at *1-2 (Vt. Nov. 2017) (unpub.). In affirming the trial court's decision, the Vermont Supreme Court observed that the case involved "the fullest and most urgent application" of free speech (i.e., "the conduct of campaigns for political office"), and

---

[4] Moreover, in each of the anti-SLAPP cases decided by this Court since Felis, the defendants' special motions to strike were all denied. See Ernst v. Kauffman, No. 5:14-cv-59, 2016 WL 1610608 (D. Vt. Apr. 20, 2016); Jenkins v. Miller, No. 2:12-cv-184, 2017 WL 4402431 (D. Vt. Sept. 29, 2017); MyWebGrocer, Inc. v. Adlife Mktg. & Comms. Co., No. 5:16-cv-310, 2018 WL 8415139 (D. Vt. Jan. 30, 2018); Soojung Jang v. Trustees of St. Johnsbury Academy, 331 F. Supp.3d 312 (D. Vt. 2018). In all four cases, the claims at issue failed to meet the stringent threshold requirements of protected speech and/or public interest. The same is true for the present case.

4

that "the character, behavior, and qualifications of a candidate for elective office" constitute a "public issue." Id. at *2. Finally, in Cornelius v. The Chronicle, Inc., a newspaper was sued for invasion of privacy for publishing articles regarding two brothers' erratic, violent, and unpredictable behavior, their lengthy criminal involvements, and their ongoing threats to parole officers – all matters that "related to public safety and criminal investigations." 2019 VT 4, ¶¶ 2, 5, 10, 209 Vt. 405, 206 A.3d 710 (2019).

Notably, none of those cases nor any of the other cases Defendants rely upon out of this circuit address a trademark infringement claim in the context of an anti-SLAPP motion. Instead, the aforementioned cases were all brought purely based upon complaints for libel or invasion of privacy and were directly related to the defendants' speech – fitting squarely within the anti-SLAPP's stated intended use. Here, Defendants attempt, unsuccessfully, to conflate the notion of free speech with Plaintiff's right to protect its trademarks in the United States. That distinction is important. Plaintiff is strictly seeking to enjoin Defendants from unlawfully infringing on and using its protected marks in the United States *when* engaging in free speech, but Plaintiff is in no way trying to limit Defendants' right to engage in the speech or express their policy opinions on marine conservation. Nor is Plaintiff seeking to prevent Defendants from offering opinions to the public that are critical of Plaintiff. In fact, Defendants' speech – so long as it is not defamatory – is not at issue or being restrained in any way, whether it is public speech or not.

Finally, this case does not fit the mold of a Vermont anti-SLAPP action because it does not involve the power imbalance the statute seeks to protect. Specifically, this is not a case where parties with means are using litigation to intimidate parties without means into silence – i.e., by filing a suit too "intimidating, punishing and expensive for ordinary citizens to fight." See Felis, supra; see also Soojung Jang v. Trustees of St. Johnsbury Academy, 331 F. Supp.3d 312, 335 (D.

Vt. 2018) (citing Felis, 2015 VT 129, at ¶¶ 47-48) (denying anti-SLAPP motion and recognizing that, in enacting Vermont's anti-SLAPP statute, "the Legislature intended to prevent one side of a public debate from misusing the court system to unilaterally control an issue and, in particular, to prevent those with extensive financial resources from intimidating and silencing citizen participants"). As evidenced by Watson's own declaration, he is no ordinary citizen – he is a well-known and awarded leader in marine conservation who holds a great deal of power over those in the industry (so much so that he is not only a leader of but the inspiration and figurehead for the two other Defendants). ECF No. 18-1 (Watson Dec.), at ¶¶ 4, 48-54; ECF Nos. 2-14 and 2-16; ECF Nos. 25-8 and 25-9. Unlike Defendants, most ordinary citizens do not have the means to own and buy ships and are not featured on billboards in Times Square. Declaration of Abigail J. Remore, Esq. in Opposition to Defendants' Special Motion to Strike the Complaint, filed herewith, at Exs. 1 through 3.

Simply put, Defendants are not being overpowered into silence by this lawsuit, and they remain free to pursue their mission without resorting to intellectual property rights violations and other unlawful activity. Accordingly, Defendants' anti-SLAPP motion should be denied.

## II. Defendants Cannot Meet the Burden of Establishing Their Conduct is Protected Under Vermont's Anti-SLAPP Statute

Even if Plaintiff was seeking to stifle Defendants' free speech, which it is plainly not, Defendants cannot meet either of the requirements necessary for Vermont's anti-SLAPP statute to apply under the present circumstances. Specifically, the anti-SLAPP statute will only apply if Defendants can show that (1) the conduct from which SSCS's claims arise is purely an exercise of

free speech, and (2) such speech concerns a public issue.[5] Jenkins v. Miller, No. 2:12-cv-184, 2017 WL 4402431, at *31 (D. Vt. Sept. 29, 2017); Felis, 2015 VT 129, at ¶¶ 51-52.  Defendants cannot meet even the first element of their threshold burden insofar as Plaintiff's claims do not arise from purely an exercise of free speech.

Defendants summarily dismiss SSCS's claims of trademark and service mark infringement, unfair competition, false advertising, and several others as mere "corporate torts," in contending that SSCS is attempting to silence Defendants' direct-action campaigns to force compliance with international conservation laws.[6]  ECF No. 18, at 7.  Nothing could be further from the truth.  Rather than addressing the specific nature of SSCS's claims, Defendants argue that they are engaging in speech and that the Lanham Act (which forms the basis for many of SSCS's claims) must therefore take a back seat to the First Amendment; however, this is not the case, and the Fourth Circuit cases Defendants cite for this proposition confirm as much.

In Radiance Found., Inc. v. N.A.A.C.P., 786 F.3d 316 (4th Cir. 2015), the court ruled that the First Amendment trumped only when the plaintiff's mark was used by the defendant solely for parody, satire, or criticism, rather than in a commercial sense as a source indicator.  Here, in stark contrast, Defendants are using SSCS's trademarks to indicate source or origin, to pass off their organization as Plaintiff's, and to cause confusion, as evidenced, for example by the facts that (a)

---

[5] Defendants contend that their conduct falls under either Section 1041(i)(2) or (i)(4) of Vermont's anti-SLAPP statute, which cover, respectively, "any written or oral statement made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other proceeding authorized by law," and "any other statement or conduct concerning a public issue or an issue of public interest which furthers the exercise of the constitutional right of freedom of speech . . . ."  ECF No. 18, at 6.

[6] Defendants argue that "corporate formalities" cannot be used to "shut down citizens taking direct action against a government's failure to abide by the law" (ECF No. 18, at 7), citing NAACP v. Alabama, 357 U.S. 449 (1958), a case involving a state's requirement that a foreign organization first register and provide certain information before conducting business in the state.  This argument makes no sense, however, as SSCS's lawsuit and claims of infringement are inapposite to issues relating to "corporate formalities."

7

Defendant SSO uses SSCS's registered SEA SHEPHERD mark in its name and SSCS's registered Jolly Roger mark in its logo; (b) Defendants CPWF and SSO both are falsely claiming on their websites (decades after SSCS first used and registered its trademarks – which Mr. Watson assisted SSCS in applying for) to be the original owners of SSCS's trademarks and that SSCS "stole our logo"; and (c) when Defendants CPWF and Watson launched SSO, SSO publicly claimed that "IT IS Sea Shepherd."

As SSCS has explained in prior filings with this Court (*see* ECF No. 25), it is well established in the Second Circuit that, "when another's trademark (or a confusingly similar mark) is used without permission *for the purpose of source identification*, trademark law generally prevails over the First Amendment," and, "[i]n these circumstances, the exclusive right guaranteed by the trademark law is generally superior to the general free speech rights of others." Yankee Pub. Inc. v. News Am. Pub. Inc., 809 F. Supp. 267, 275-76 (S.D.N.Y. 1992) (emphasis in original); see also United We Stand America, Inc. v. United We Stand, America New York, Inc., 128 F.3d 86, 93 (2d Cir. 1997) (defendant's use of plaintiff's mark to associate itself with plaintiff's political movement was not protected by the First Amendment); Planned Parenthood Federation of America, Inc. v. Bucci, No. 97 Civ. 0629 (KMW), 1997 WL 133313, *10-11 (S.D.N.Y. Mar. 24, 1997), aff'd, 152 F.3d 920 (2d Cir. 1998) (rejecting First Amendment defense in a Lanham Act case where defendant's use of plaintiff's mark was a source indicator rather than a part of a communicative message). Here, Defendants inarguably are using SSCS's duly-registered and owned trademarks as source identifiers, as the newly-formed Sea Shepherd Origins is the name of an organization that offers goods and services identical to those of SSCS and uses a logo that is essentially identical to SSCS's Jolly Roger Logo. Defendants' infringing uses are clear commercial uses intended to confuse consumers through a false impression of affiliation with

SSCS and to attract donors and support for their ocean conservation efforts in direct competition with SSCS. That is not simply an exercise of the right to free speech. See United We Stand America, 128 F.3d at 93 (even if a defendant might communicate its message more effectively by appropriating plaintiff's mark, such speech is not protected if it would cause consumer confusion).

Defendants' citation to Lamparello v. Falwell, 420 F.3d 309 (4th Cir. 2005) similarly affords them no help. In that case, the court ruled that a "gripe site" set up to criticize a trademark holder that was not likely to cause confusion nor capture the mark holder's customers and profits was protected by the First Amendment. There is a vast difference between, on the one hand, criticizing the trademark holder and, on the other, infringing the trademark itself and engaging in unfair and deceptive forms of competition with a bad faith intent to profit off of those infringing acts. As also explained by SSCS in prior filings with this Court (*see* ECF No. 25), Defendants' seashepherdorigins.org website is far more than just a non-commercial "gripe site" to air complaints about SSCS, and SSO's use of the SEA SHEPHERD trademark as the name of its organization and in its domain goes well beyond a nominative fair use. Defendants are using SSCS's marks to raise money for CPWF and other member organizations and to make false statements like SCSS "stole our logo." Courts have rejected similar defenses under these precise circumstances. See People for Ethical Treatment of Animals v. Doughney, 263 F.3d 359, 366 (4th Cir. 2001) (rejecting parody defense when mark was used in domain name which conveyed no message of criticism and where site linked to commercial sites); OBH, Inc. v. Spotlight Mag., Inc., 86 F. Supp. 2d 176, 186 (W.D.N.Y. 2000) (finding site which contained link to other site operated for commercial purposes a "use in commerce" and rejecting parody defense because use of plaintiff's mark as domain name created a likelihood of confusion).

This Court's decision in Jenkins lends further support to SSCS's position that the present action does not fall under the anti-SLAPP rubric. In Jenkins, certain defendants claimed free speech protections for their provision of support to the primary defendant (Miller, who had kidnapped a child and removed her from the country to interfere with lawful custody proceedings and avoid the jurisdiction of U.S. authorities), which included speaking out and advocating for Miller and her views, making representations to various courts, and seeking donations for Miller. Those defendants moved to strike the plaintiff's claims under the Vermont anti-SLAPP statute on the grounds that the plaintiff's claims supposedly arose from defendants' protected speech. This Court, however, found that the Vermont anti-SLAPP statute did not apply despite the fact that the claims at issue did include allegations that the defendants had engaged in speech, stressing that "the Court must assess the nature of the allegations themselves" and that "the nature of the claim entails more than speech." Jenkins, 2017 WL 4402431, at *31-32. The same situation applies here whereby Plaintiff's claims either do not arise from speech or they arise solely from the *unprotected* and/or unlawful aspects of speech. See ECF Nos. 1, 2, and 25, and the exhibits thereto (detailing Defendants' infringing uses and unfair and deceptive acts of competition, all conducted, instigated, and coordinated by Paul Watson). Accordingly, Defendants' motion to strike should be denied.

### III. Plaintiff Has Satisfied Its Own Burden Under Vermont's Anti-SLAPP Statute

Defendants have not and cannot meet their initial burden in this case, and Defendants' motion to strike must be denied on that basis alone. However, even if Defendants could satisfy their initial burden, Plaintiff easily satisfies its subsequent burden of establishing (a) that the defendant's exercise of the right to freedom of speech and to petition was devoid of any reasonable

10

factual support and any arguable basis in law, and (b) the plaintiff suffered actual injury. 12 V.S.A. § 1041(e)(1); Jenkins, 2017 WL 4402431, at *31.

First, SSCS has already overwhelmingly established that Defendants' "speech" at issue in this litigation is not supported by reasonable factual or legal justification. In particular, SSCS respectfully directs the Court to the Plaintiff's previous filings in this matter, which may be considered by the Court pursuant to 12 V.S.A. § 1041(e)(2). For example, Watson made the following statement acknowledging that the Captain Paul Watson Foundation and Sea Shepherd are two separate organizations, and that SSCS is the rightful legal owner of the Sea Shepherd name: "I have decided instead to establish the Captain Paul Watson Foundation…I will let Sea Shepherd be Shepherd. They claim legal authority over the logo and the name that I created. So be it." See ECF No. 1 (Plaintiff's Verified Complaint), at Ex. C (ECF No. 1-3). Any contention that United States trademark rights in the SEA SHEPHERD and Jolly Roger marks belong to anyone other than Plaintiff is demonstrably false, as Plaintiff is the owner of numerous incontestable Federal Trademark Registrations covering the marks. See 15 U.S.C. §1057(b); Lane Capital Mgmt., Inc. v. Lane Capital Mgmt., Inc., 192 F.3d 337, 345 (2d Cir. 1999). Further, through various social media posts, Watson wrongly maintains that Plaintiff has "chang[ed] course of what has been the most effective marine conservation movement on the planet." Id. at Ex. D (ECF No. 1-4). Again, this is demonstrably false. Plaintiff's mission has been and remains consistent with its Articles of Incorporation that set forth the following purposes for which Plaintiff was established:

> *"2.1    To promote awareness of environmental problems, alternative and solutions among the people of the United States and the World.*
> *2.2    To educate the general public as the importance of ecological stability and sound environmental management.*
> *2.3    To research, develop and promote innovative environmentally sound alternatives to industries and institutions.*

> *2.4     To provide funding for scientific research in the field of ecology, applied anthropology, environmental planning, agriculture, aquaculture and urban engineering and to provide funding for scholarships to the general public for studies in those same fields.*
> *2.5     To initiate action to oppose industrial and/or institutional development projects which endanger or threaten the health and welfare of human populations.*
> *2.6     To initiate action on behalf of endangered or threatened species of flora and fauna when necessary to insure continued survival.*
> *2.7     To initiate action to prevent the misuse of natural habitat if such misuse demonstrates evidence of potential ecological damage.*
> *2.8     To foster cooperation among Nations to protect ecosystems in accordance with the common heritage principle and to provide guidance in the formulation and enactment of international law designed to protect the environment withing the tenants of the common heritage principle.*
> *2.9     To do everything incidental and necessary to promote and attain the foregoing objects throughout the United States and the World."*

Id. at Ex. E (ECF No. 1-5). Watson's statements regarding Plaintiff's purposes and activities are demonstrably false and have caused reputational harm in the minds of current supporters, potential new supporters, and current and potential partners of Plaintiff.

Watson's false statements do not stop there. SSCS respectfully directs the Court to Plaintiff's previous filings in this matter that contain additional examples of Watson's false statements and other legally unjustifiable conduct. Previous filings may be considered by the Court pursuant to 12 V.S.A. § 1041(e)(2). See Plaintiff's Verified Complaint (ECF No. 1), filed Dec. 29, 2022, at ¶¶ 18, 26, 35-52, 54, 56-59 and Exs. A through Q (ECF Nos. 1-1 through 1-17); Plaintiff's Memorandum of Law in Support of Its Motion for Preliminary Injunction (ECF No. 2-1), filed Dec. 29, 2022, at 2-23; Affidavit of Pritam Singh in Support of Plaintiff's Motion for Preliminary Injunction (ECF No. 2-2), filed Dec. 29, 2022, at ¶¶ 3-20 and Exhibit 1 (ECF No. 2-3); Declaration of Abigail J. Remore, Esq. in Support of Plaintiff's Motion for Preliminary Injunction (ECF No. 2-4), filed Dec. 29, 2022, at Exs. 1 through 20 (ECF Nos. 2-5 through 2-24); Plaintiff's Reply Brief in Further Support of Its Motion for Preliminary Injunction (ECF No. 25), filed Jan. 30, 2023, at 7-19; Declaration of Pritam Singh in Support of Plaintiff's Motion for

Preliminary Injunction (ECF No. 25-1), filed Jan. 30, 2023, at ¶¶ 2-10 and Exs. 1 through 3 (ECF Nos. 25-2 through 25-4); and Declaration of Abigail J. Remore, Esq. in Further Support of Plaintiff's Motion for Preliminary Injunction (ECF No. 25-6), filed Jan. 30, 2023, at Exs. 1 through 12 and 15 (ECF Nos. 25-7 through 25-18 and 25-21).

Likewise, SSCS has already shown that Defendants' unlawful conduct is likely to and has actually caused harm to SSCS and will continue to do so unless enjoined. Defendant's conduct is interfering with Plaintiff's exclusive right to control the commercial use of its marks in the United States and is interfering with the ability to generate current and future fundraising. Additionally, Plaintiff has lost and will continue to lose control of its reputation and good will attached to its marks as a result of Watson's false statements regarding them. SSCS respectfully directs the Court to Plaintiff's previous filings in this matter that demonstrate harm and likelihood of further harm, which may be considered by the Court pursuant to 12 V.S.A. § 1041(e)(2). See Plaintiff's Verified Complaint (ECF No. 1), filed Dec. 29, 2022, at ¶¶ 53, 55, 60-66; Plaintiff's Memorandum of Law in Support of Its Motion for Preliminary Injunction (ECF No. 2-1), filed Dec. 29, 2022, at 17-20; Affidavit of Pritam Singh in Support of Plaintiff's Motion for Preliminary Injunction (ECF No. 2-2), filed Dec. 29, 2022, at ¶¶ 16-18, 20; Plaintiff's Reply Brief in Further Support of Its Motion for Preliminary Injunction (ECF No. 25), filed Jan. 30, 2023, at 3, 16-17, 19; and Declaration of Pritam Singh in Support of Plaintiff's Motion for Preliminary Injunction (ECF No. 25-1), filed Jan. 30, 2023, at ¶ 8.

## IV. Conclusion

Defendants have not shown that their violations of trademark law and their unfair and deceptive acts of competition with Plaintiff are protected by their supposed "free speech" rights. For the foregoing reasons, SSCS respectfully requests that this Court DENY Defendants' Special

Motion to Strike the Complaint.  SSCS also respectfully requests, pursuant to 12 V.S.A. § 1041(f)(1), that the Court award costs and reasonable attorney's fees incurred by SSCS in opposing Defendants' motion.

Respectfully Submitted,

Dated:  February 7, 2023          By:  */s/ Walter E. Judge, Jr.*
                                                        Walter E. Judge, Jr.
                                                        Downs Rachlin Martin PLLC
                                                        Attorneys for Plaintiff
                                                        199 Main Street
                                                        P.O. Box 190
                                                        Burlington, VT  05402
                                                        802-863-2375
                                                        wjudge@drm.com

*Of counsel:*

Abigail J. Remore, Esq. (*pro hac vice*)
Lindsay A. Dischley, Esq. *(pro hac vice)*
CHIESA SHAHINIAN & GIANTOMASI PC
105 Eisenhower Parkway
Roseland, NJ 07068
ajremore@csglaw.com
ldischley@csglaw.com
(973) 325-1500

21866918.1