```
                    UNITED STATES DISTRICT COURT
                              FOR THE
                        DISTRICT OF VERMONT

SEA SHEPHERD CONSERVATION           :
SOCIETY                             :
           Plaintiff,               :
                                    :
     v.                             :    Case No. 2:22-CV-00227
                                    :
PAUL WATSON, CAPTAIN PAUL           :
WATSON FOUNDATION,                  :
SEA SHEPHERD ORIGINS                :
                                    :
           Defendants.              :
```

## OPINION AND ORDER

Plaintiff, Sea Shepherd Conservation Society ("SSCS") filed this action against Defendants Paul Watson, Sea Shepherd Origins ("SSO") and the Captain Paul Watson Foundation ("CPWF" or "the Foundation") for trademark and service mark infringement, unfair competition, false advertising, cyberpiracy, and other relief under the Lanham Act and under common law. The matter is presently before the Court on Defendants' motion to dismiss for lack of personal jurisdiction over SSO and CPWF under Fed. R. Civ. P. 12(b)(2) **(ECF 17)** and Defendants' special motion to strike the complaint under 12 V.S.A. § 1041 **(ECF 18)**. For the reasons that follow, Defendants' motion to dismiss and motion to strike the complaint are **denied.**

## BACKGROUND

The Court has drawn the following background from SSCS's complaint and the affidavits submitted by the parties. *See*,

*e.g.*, *Grand Rivers Enters. Six Nations, Ltd. v. Pryor*, 425 F.3d 158, 165 (2d Cir. 2005).

SSCS is a non-profit corporation established in 1981 whose mission is to protect and conserve the world's oceans and marine wildlife. **ECF 1 at 4.** Though SSCS has authorized the formation of affiliated Sea Shepherd legal entities across the globe, several of which own trademark and service rights in and to various Sea Shepherd marks in their respective jurisdictions, SSCS is the exclusive owner of the "SEA SHEPHERD" name and trademark as well as the organization's distinctive "Jolly Roger" logo mark in the United States.

Defendant Paul Watson was one of SSCS's original founders. Watson has since served SSCS in several capacities, including as a member of the Board of Directors, President, and Executive Director. **ECF 1 at 5.** Watson resigned from his role on the SSCS Board in 2019, and fully resigned from SSCS on July 27, 2022. **ECF 1 at 5.**

Prior to Watson's resignation from SSCS, the Captain Paul Watson Foundation ("CPWF" or "the Foundation") was founded on July 13, 2022. **ECF 17-2 at 2.** Sea Shepherd Origins ("SSO") was founded several months later, on November 21, 2022. **ECF 17-1 at 2.** The formation of these two new organizations is the product of an apparent internal rift within SSCS regarding the manner in which the organization carries out its mission to protect and

2

conserve the world's oceans and marine wildlife. Both new organizations deny association or affiliation with SSCS. The CPWF has identified its founding principles to "promote and further the legacy of Captain Watson by continuing his life's work of protecting and conserving the ocean through aggressive, but non-violent direct action." **ECF 17-2 at 3.** SSO identifies itself as "an international coalition that was established by the heads of several of the independent international Sea Shepherd Entities," including CPWF and the Sea Shepherd chapters of France, the UK, Brazil, New Caledonia, and Hungary, to "strengthen the unity of Sea Shepherd entities and prevent the movement from sliding away from its core values." *Id*; **ECF 12-1 at 4, 13.**

Plaintiff's claims against Defendants center around a core theme: Defendants' commercial use of the "SEA SHEPHERD" name and "Jolly Roger" logo as source indicators in their promotions, advertising, fundraising, as well as in their critique of and competition with SSCS. Initially, Plaintiffs filed with the Court a motion for preliminary injunction to enjoin and restrain Defendants from using the "SEA SHEPHERD" name and the Jolly Roger logo in connection with their operation or advertisement. **ECF 2.** Defendants' reply to the motion for a preliminary injunction, however, raised the threshold matter currently under the Court's consideration: whether the Court has personal

3

jurisdiction over Defendants CPWF and SSO to enter an interlocutory injunction against them. **ECF 16 at 16-17.** Subsequently, Defendants SSO and CPWF filed the pending motion to dismiss for lack of personal jurisdiction and Defendants Paul Watson, SSO, and CPWF filed the pending motion to strike the complaint on January 23, 2023.

## DISCUSSION

**I.   Motion to Dismiss for Lack of Personal Jurisdiction**

**A. Legal Standard**

Plaintiff bears the burden of demonstrating the Court's personal jurisdiction over the Defendants. *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34 (2d Cir. 2010) (citing *In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d 204, 206 (2d Cir. 2003) (per curiam)).

The showing that a plaintiff must make to allow a court to conclude that it has personal jurisdiction over a defendant "varies depending on the procedural posture of the litigation." *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 82, 84 (2d Cir. 2013). On a motion to dismiss for lack of personal jurisdiction filed pursuant to Rule 12(b)(2), the plaintiff bears the burden of showing jurisdiction. *See Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990). A plaintiff can make this showing through their "own affidavits and supporting materials containing an averment of

4

facts that, if credited, would suffice to establish jurisdiction over the defendant." *S. New England Tel. Co. v. Glob. NAPs Inc.*, 624 F.3d 123, 138 (2d Cir. 2010) (quoting *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 208 (2d Cir. 2001)). When the Court chooses not to hold an evidentiary hearing on the jurisdiction allegations, the Court construes all pleadings and affidavits in the light most favorable to plaintiff, and "where doubts exist, they are resolved in the plaintiff's favor." *Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*, 763 F.2d 55, 57 (2d Cir. 1985).

"A court may not grant a final, or even an interlocutory, injunction over a party over whom it does not have personal jurisdiction." *In re Rationis Enters., Inc. of Panama*, 261 F.3d 264, 270 (2d Cir. 2001). In light of Plaintiff's pending motion for a preliminary injunction to enjoin Defendants' use of the "SEA SHEPHERD" name and Jolly Roger logo, Plaintiff must demonstrate more than the prima facie showing of personal jurisdiction that is normally required to survive a motion to dismiss under Fed. R. Civ. Pro. 12(b)(2). *Broker Genius, Inc. v. Seat Scouts, LLC*, No 17-Cv-8627 (SHS), 2019 WL 4054003, at *4 (S.D.N.Y. Aug. 27, 2019) (citing *Weitzman v. Stein*, 897 F.2d 653, 659 (2d Cir. 1990) ("a prima facie showing of jurisdiction will not suffice where a plaintiff seeks preliminary injunctive relief")); *see also Homeschool Buyers Club v. Brave Writer, LLC*,

5

2020 WL 1166053, at *7 (S.D.N.Y. Mar. 11, 2020). "Where a challenge to personal jurisdiction is interposed on an application for a preliminary injunction, the district court must determine that the moving party for the injunction has established 'at least a reasonable probability of ultimate success on the question of the court's in personam jurisdiction' over the non-moving party." *Lam Yeen Leng v. Pinnacle Performance Ltd.*, 474 F. App'x 810, 813 (2d Cir. 2012) (quoting *Weitzman*, 897 F.2d at 659).

Vermont's long arm statute, 12 V.S.A. § 913(b), allows courts to exercise jurisdiction over nonresident defendants within reach of the Due Process Clause of the United States Constitution. *Fox v. Fox*, 197 Vt. 466, 471 (2014) (quoting *N. Aircraft, Inc. v. Reed*, 154 Vt. 36, 40 (1990)). Thus, to subject a defendant to this Court's jurisdiction, "[P]laintiff must allege (1) that [] [D]efendant has certain minimum contacts within the relevant forum, and (2) that exercise of jurisdiction is reasonable in the circumstances." *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 673 (2d Cir. 2013) (internal quotations omitted).

The standards for the Court's general and specific personal jurisdiction are distinct. *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 566 (2d Cir. 1996). Specific jurisdiction "exists when a State exercises personal

jurisdiction in a suit arising out of or related to the defendant's contacts with the forum," *Jenkins v. Miller*, 983 F. Supp. 2d 423, 442 (D. Vt. 2013) (citing *Metro. Life*, 84 F.3d at 567-68), while "a court's general jurisdiction . . . is based on the defendant's general business contacts with the forum state," *id.*, and arises when "defendant's minimum contacts are so 'continuous and systematic' as to render [the defendant] essentially at home in the forum State," *Irving v. Rivera, Inc.*, 2011 WL 5329726, at *2 (Nov. 4, 2011) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 916 (2011)) (internal citations omitted).

"The assessment of minimum contacts is fact-specific and must necessarily be tailored to the circumstances of each case." *Metro. Life*, 84 F.3d at 570. For purposes of a Court's general jurisdiction, a corporation's place of incorporation or principal place of business are the two "paradigm bases" for a forum's authority over a non-resident entity. *Daimler AG v. Bauman*, 571 U.S. 117, 139 (2014). In an "exceptional case," a corporation could become subject to the personal jurisdiction of an additional forum if the corporation's contacts with that state are "so continuous and systematic as to render [it] essentially at home." *Daimler*, 571 U.S. at 138-39 & n.19 (quoting *Goodyear*, 564 U.S. at 919 (internal quotation marks omitted)). The Supreme Court instructs that a corporation's

7

principal place of business—it's "nerve center"—is "the place where a corporation's officers direct, control, and coordinate the corporation's activities." *Hertz Corp v. Friend*, 559 U.S. 77, 92-93 (2010).

Once a plaintiff has demonstrated that a defendant has sufficient minimum contacts with the forum under either specific or general jurisdiction, the Court turns to the "reasonableness" prong of the due process analysis: a plaintiff must show that the Court's jurisdiction over defendant would be reasonable under the circumstances of the case and corresponds with "traditional notions of fair play and substantial justice." *Metro. Life*, 84 F.3d at 568 (internal citations omitted). The Court's reasonableness assessment balances five factors: (1) the burden to the defendant; (2) the interest of the forum state in the dispute; (3) the plaintiff's interest in convenient and effective relief; (4) the interstate judicial system's interest in efficient case resolution; and (5) the collective interest of the states in furthering their shared social policies. *Best Van Lines, Inc. v. Waler*, 490 F.3d 239, 242 (2d Cir. 2007).

**B. The Court's Jurisdiction over Sea Shepherd Origins**

Defendant SSO is a not-for-profit entity organized and registered in France. SSO holds no facilities or offices in Vermont, is not registered to do business in Vermont, does not own or lease property in Vermont, has no registered agent for

service of process in Vermont, and pays no Vermont state taxes. Plaintiff's assignment of this Court's general jurisdiction over SSO rests on Watson's role in the organization. As a Vermont resident, Defendant Watson has not contested the Court's general jurisdiction over him as an individual. While Defendants have raised a dispute over the regularity of Watson's presence at his Vermont residence, the Court concludes in the absence of discovery or an evidentiary hearing that Plaintiff has pled sufficient facts that when viewed in the light most favorable to the Plaintiff support that Watson is a Vermont resident and that his involvement with SSO and CPWF occurs while he is in Vermont. The question of this Court's jurisdiction over SSO at this stage of the litigation, therefore, turns on the degree to which Watson's direction, control, and management of SSO from Vermont requires a finding that Vermont is SSO's principal place of business.

Plaintiff's submissions, credited as true, demonstrate to the Court a reasonable probability of ultimate success on the question of the Court's general jurisdiction over SSO. While SSO's bylaws identify an address in Paris, France as the organization's headquarters and mailing address, SSO's corporate structure and division of control tells a different story. SSO's board members are dispersed across multiple jurisdictions and do not operate out of a single headquarters. Nonetheless, Watson's

9

directorial control of the organization is evident in the organization's internal structure. Paul Watson is a founding member of SSO, SSO's Co-President, Chairman of SSO's five-member Board, and a member of SSO's five-member Ethics and Oversight Committee. **ECF 29-5.** SSO's bylaws identify Watson as the organization's sole "Original Founding Member," SSO's only non-removable leadership position benefitting from life-long membership and four votes in general meetings and in the Ethics and Oversight Committee. *Id.* In comparison, the additional four founding members of the organization have only two votes for a period of six years in general meetings and in the Ethics and Oversight Committee, after which they become "Active Members" carrying only one vote each in those forums. Moreover, Watson's leadership roles in SSO carry the power to "represent the association in all acts of civil life," "undertake all actions in court on behalf of the association before all French or foreign jurisdictions and to enter into settlements," "undertake any proceedings in court or out of court intended to ensure the defense of the interests of the association and its members, both in France and abroad," "decide[] on the expenses to incur," and "describe the means that the association proposes to implement to achieve its objectives." **ECF 29-5 at 10.**

The lens of a court's application of the "nerve center" test focuses on where a corporation's "high-level" decisions are

10

made. *See*, *e.g.*, *St. Paul Fire & Marine Ins. Co. v. Scopia Windmill Fund, LP*, 87 F. Supp. 3d 603, 605 (S.D.N.Y. 2015); *Cent. W. Virginia Energy Co. v. Mountain State Carbon, LLC*, 636 F.3d 101, 106 (4th Cir. 2011). Plaintiff has pled sufficient facts to support a finding that the bulk of the direction, control, and coordination of SSO's activities occur in Vermont, where Paul Watson, SSO's "Original Founder," Chairman, and Co-President, is a resident. *See Hertz Corp v. Friend*, 559 U.S. 77, 80–81 (2010). Defendants have raised no facts to suggest that any other individual in the organization exercises "authority remotely comparable to that exercised" by Paul Watson. Applying the nerve center test to the facts of this case, the Court concludes that SSO's principal place of business is in Vermont.

Accordingly, construing the pleadings and affidavits in the light most favorable to the Plaintiff, the Court concludes that Plaintiff has demonstrated a "reasonable probability of ultimate success on the question of the [C]ourt's" general jurisdiction over SSO on account of its finding that Vermont is SSO's principal place of business by way of Paul Watson's direction and control of the corporation.

Moving to the second prong of the jurisdictional analysis, the Court finds that given Watson's directorial role in SSO, the reasonableness factors weigh in favor of the Court's jurisdiction over SSO. First, because SSO is essentially at home

11

in Vermont by virtue of Watson's clear leadership of the organization, the Court finds that Defendant's burden to defend their interests in Vermont is low. As highlighted above, SSO's bylaws list Paul Watson as the individual responsible for representing the organization in all judicial proceedings, making Watson's domicile the most convenient forum in which to defend the action against SSO. Second, Vermont, like any state, has an evident interest in protecting its citizens from any marketplace confusion caused by Defendants' alleged unauthorized use of Plaintiff's marks. Third, Plaintiff, who has offices in Woodstock, Vermont, has an interest in the convenient and efficient adjudication of their claim in the State of Vermont. And as the key witnesses for all parties are Vermont residents, the interstate judicial system's interest in efficient case resolution is supported by litigating the case in this jurisdiction. Finally, public policy interests weigh in favor of jurisdiction over an organization that is directed and controlled by a state resident in that state, but whose alleged unlawful conduct effects citizens of all states who interact with, contribute to, and volunteer for both Plaintiff and Defendant organizations.

    For the foregoing reasons, the Court holds that SSCS has satisfied its burden of showing a reasonable likelihood that the

Court has personal jurisdiction over SSO. On this basis, Defendants' motion to dismiss as to SSO must be denied.

## C. The Court's Jurisdiction over the Captain Paul Watson Foundation

Plaintiff's assertion of the Court's jurisdiction over Defendant CPWF likewise hinges on the degree of Paul Watson's Vermont-based leadership of the Foundation. While on paper CPWF appears to have few contacts with the State of Vermont, the Court finds that in reality the organization's nerve center lies at the Vermont home of its namesake, Paul Watson.

Defendant CPWF is a not-for-profit foundation incorporated and registered in the State of Delaware. CPWF has no facilities nor offices in Vermont, is not registered to do business in Vermont, neither owns nor leases property in Vermont, has no registered agent for service of process in Vermont, pays no Vermont state taxes, and lists the Delaware address of a third-party business for purposes of accepting service of process. CPWF's Board of Directors is made of up two members: Omar Todd and Clementine Pallanca, neither of whom reside in the United States. In fact, the Declaration of Omar Todd suggests that the CPWF is operated from offices in the United Kingdom and Australia. **ECF 17-2 at 2.** Todd additionally attests that Watson is not a Board member of the Foundation and that Watson has no

13

executive, management, or officer position with the CPWF. **ECF 17-2 at 3.**

Nonetheless, Paul Watson has held himself out to be the Founder and leader of the Captain Paul Watson Foundation, referring to the Foundation as: "[m]y new organization" that "I have decided to establish". **ECF 1-3, 1-4, 25-12, 25-14.** The organization's mission statement supports this assertion: "The purpose of this Foundation is to carry on Captain Paul Watson's effective agenda . . .. The purpose of the Foundation is to focus on Captain Paul Watson's particular vision." **ECF 25-8.** In other words, the organization represents itself to the public as the embodiment of Paul Watson's agenda, strongly signifying that the Foundation's true control—its nerve center—lies with Paul Watson and not the Foundation's international Board of Directors.

Indicative of Watson's control of the Foundation, CPWF has identified a PO box in Woodstock, Vermont as its contact address on Facebook and LinkedIn pages, as well as on its personal representations to supporters. **ECF 29-1, ECF 36.** Moreover, Plaintiff asserts that Watson has made representations on behalf of the Foundation to request loans for the Foundation for the purpose of "regain[ing] control of my own name" through litigation. **(ECF 25-5).** The Court finds that these allegations, accepted as true, demonstrate that CPWF's principal place of

14

business is located where Paul Watson controls, directs, and manages the Foundation. As Watson has not contested this Court's personal jurisdiction over him as a Vermont resident and construing the pleadings and affidavits in the light most favorable to the Plaintiff, the Court concludes that CPWF's nerve center and Watson's Vermont place of residence are one in the same.

Additionally, the Court's assertion of personal jurisdiction over CPWF comports with "traditional notions of fair play and substantial justice." Watson, a Vermont resident and the Foundation's namesake, remains the most suitable person to defend CPWF's interests; Plaintiff maintains an in-state office; the key witnesses to the case reside in Vermont; Vermont's interest in addressing the allegations against two organizations directed from the State are strong; and the inter-state policy interests in remedying the alleged trademark-infringing conduct of a Vermont-directed Foundation is high. Defendants' motion to dismiss as to CPWF, therefore, must likewise be **denied.**

For the foregoing reasons, the Court finds that the SSCS has satisfied its burden to demonstrate the reasonable probability that the Court has personal jurisdiction over each of the Defendants in this action.

II.  **Special Motion to Strike**

Defendants have additionally submitted a special motion to strike the complaint under 12 V.S.A. § 1041. **ECF 18.** While this Court has applied Vermont's anti-SLAPP statute in the past, the Court finds that in light of the Second Circuit's decision in *La Liberte v. Reid*, 966 F.3d 79 (2d Cir. 2020), Defendants' motion to strike cannot stand.

Vermont's anti-SLAPP statute permits defendants to file a special motion to strike "baseless lawsuits" that target the defendant's free exercise of speech. 12 V.S.A § 1041(a); *see also Chandler v. Rutland Herald*, No. 2015-265, 2015 WL 7628687, *2 (Vt. Nov. 19, 2015). The statute requires courts to stay all but "limited discovery," hold a hearing, and grant a defendant's motion to strike "unless the plaintiff shows that: (A) the defendant's exercise of his or her right to freedom of speech and to petition was devoid of any reasonable factual support and any arguable basis in law; and (B) the defendant's acts caused actual injury to the plaintiff." 12 V.S.A § 1041(e)(2).

In holding that California's anti-SLAPP law was "inapplicable in federal court" in *La Liberte v. Reid*, the Second Circuit explained that where "a Federal Rule of Civil Procedure answers the same question as the special motion to strike," the "Federal Rule governs[.]" *La Liberte*, 966 F.3d at 87. Specifically, because California's anti-SLAPP statute set

16

different standards "under which a court must dismiss a plaintiff's claim before trial" that are more stringent than the pleading standards required by Fed. R. Civ. P. 12(b)(6)'s plausibility standard and Fed. R. Civ. P. 56's standard that a "genuine dispute of material fact" is sufficient to require a case to proceed to trial, California's statute improperly "abrogate[d]" the federal procedural rules.

As Judge Reiss recently assessed in *Sall v. Seven Days, Inc. et al.*, No. 2:20-cv-214-cr *9 (March 20, 2023), Vermont's anti-SLAPP statute is likewise inapplicable in federal court:

> Vermont's anti-SLAPP statute permits a judge at the pleading stage to weigh evidence and resolve disputed issues of fact. It does not require the judge to construe evidence in the light most favorable to a plaintiff; it does not require the court to accept well-pleaded factual allegations as true; and it allows-and may even require-a plaintiff to present evidence beyond the pleadings to sustain the plaintiffs burden of proof. *See Chandler v. Rutland Herald Publ'g*, 2015 WL 7628687, at *3 (Vt. Nov. 19, 2015) ("[Plaintiff] provided no affidavits (nor any specific information) in support of his assertions. His generalized contentions are insufficient to meet his burden on the statute."); *Ernst v. Kauffman*, 50 F. Supp. 3d 553, 563 (D. Vt. 2014) (holding "unswom pleading ... fails to meet plaintiffs' burden"). In these respects, Vermont's anti-SLAPP statute directly conflicts with Fed. R. Civ. P. 8 and 12(b)(6) and seeks to import elements of Fed. R. Civ. P. 56 into the pleading process. Because Vermont's anti-SLAPP statute "establishes the circumstances under which a court must dismiss a plaintiffs claim before trial, a question that is already answered (differently) by Federal Rules 12 and 56[,]" it does not apply in federal court. *La Liberte*, 966 F.3d at 87 (internal quotation marks and citation omitted).

17

Defendants challenge the *Sall* opinion's analysis of the Vermont anti-SLAPP statute's inapplicability in federal court on three grounds, none of which persuade the Court to depart from the conclusion of its colleague. First, while Defendants point to the Ninth Circuit's alternate assessment of California's anti-SLAPP statute and its conflict with the Federal Rules of Civil Procedure, *see CoreCivic, Inc. v. Candide Group, LLC*, 46 F.4th 1136, 1143 (9th Cir. 2022), that out-of-circuit case has no bearing on the Second Circuit's conclusion in *La Liberte* that conflict does exist.

Second, Defendants contend that exclusion of Vermont's anti-SLAPP statute from use in federal court would violate the Rules Enabling Act requiring that federal rules "shall not abridge, enlarge or modify any substantive right." 28 U.S.C. § 2072. The Supreme Court has counseled that application of the Rules Enabling Act turns on "whether a [federal] rule really regulates procedure." *Sibbach v. Wilson & Co.*, 312 U.S. 1, 14 (1941). Procedure is "the judicial process for enforcing rights and duties recognized by substantive law and for justly administering remedy and redress for disregard or infraction of them." *Id*. It has been settled that where there is Federal Rule of Civil Procedure on point that "really regulates procedure," that rule is valid under the Rules Enabling Act. *Id*; *see also Millers Cap. Ins., Co. v. Hydrofarm, Inc.*, 340 F.R.D. 198, 209

(D.D.C. 2022). Moreover, courts have acknowledged that "most [Federal] Rules [of Civil Procedure] have some effect on litigants' substantive rights or their ability to obtain a remedy, [but] that does not mean the Rule itself regulates those rights or remedies." Thus, while the unavailability in federal court of Vermont's anti-SLAPP statute removes a procedural vehicle through which defendants can enforce and protect their substantive rights to freedom of speech, its absence does not in and of itself regulate or abridge those substantive rights. The Court therefore concludes that exclusion of the anti-SLAPP statute from federal court on account of its conflict with the Federal Rules of Civil Procedure does not violate the Rules Enabling Act.

Defendants' final, Tenth Amendment argument fails for similar reasons. The Tenth Amendment to the United States Constitution reserves to states the power to create rights for their citizens. U.S. CONST., amend. X. Recognition that the Federal Rules of Civil Procedure conflict with and thus supersede Vermont's anti-SLAPP statute on account of the procedural incongruency between pretrial standards for dismissing a case in no way limits the power of the state to create individual rights nor operates to abridge the freedom of speech that Chapter I, Article 13 of the Vermont Constitution guarantees.

19

Accordingly, the Court holds that despite this Court's past application of Vermont's anti-SLAPP statute, the Second Circuit's recent decision in *La Liberte v. Reid* requires the conclusion that Defendants cannot invoke the Vermont Anti-SLAPP Act's special motion to strike provision to dismiss SSCS's claim against them. *See* 966 F.3d at 88. For this reason, Defendants' special motion to strike is **denied.**

## CONCLUSION

For the reasons set forth above, Defendants' motion to dismiss for lack of personal jurisdiction as to SSO and CPWF (ECF 17) is **denied** and Defendants' special motion to strike (ECF 18) is **denied.**

SO ORDERED.

DATED at Burlington, in the District of Vermont, this 17th day of April, 2023.

                                                  /s/ William K. Sessions III
                                                  William K. Sessions III
                                                  U.S. District Court Judge